NO.  94-122

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF

T. N.

A Youth.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jon A. Oldenburg, Lewistown, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Cregg
Coughlin, Assistant Attorney General, Helena,
Montana: Thomas P. Meissner, Fergus County Attorney,
Lewistown, Montana

Submitted on Briefs: July 6, 1994

Decided: October 4, 1994

FILED

OCT 04 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a decision of the Tenth Judicial District Court, Fergus County, transferring the case of T.N. to Adult Criminal Court to be tried for the offense of Deliberate Homicide. We affirm.

We consider the following issue on appeal:
Did the District Court abuse its discretion in transferring T.N. from Youth Court to the Adult Court of the Tenth Judicial District?

T.N. is fifteen years old. His parents are divorced; his mother lives in Billings, Montana, and his deceased father lived in Roy, Montana. T.N. stated that he loved his mother, but he hated Billings, and he hated his father, but he loved Roy, Montana. T.N. was living with his father at the time of his father's death. Evidence exists -that T.N.'s father engaged in both physical and emotional abuse of T.N.

On September 30, 1993, the Fergus County Sheriff's office received a report from an individual in Roy, who complained that a foul smell was emanating from a neighborhood residence. At 11:30 a.m. on that day, a deputy responded to this complaint. Upon reaching the residence, the deputy did not find anyone about and called the Undersheriff for advice on how to proceed.

The deputy recruited Gary Smith, a business person and an E.M.T.(Emergency Medical Technician), to come to the residence. The two men forced their way into the house where they discovered the body of Michael Nelson, T.N.'s father, laying on the living room couch with blankets and clothes piled on top of him. A

2

gunshot wound to the head was obvious. The coroner and further assistance from the Sheriff's office were requested.

While the officers were investigating, several high school students gathered outside the residence. Because of talks with these students, officers learned that T.N. might have information about the death of his father.

One of the officers went with the students to the Roy School building to have the students write out statements. During this process, another student approached the deputy and stated that he had T.N. on the telephone from Billings and that T.N. was admitting that he had killed his father.

The deputy got on the phone and taped the conversation with T.N. T.N. told the deputy that he had shot his father in the back of the head with a 30-30 rifle early in the morning before school started.

T.N. was charged in Youth Court of the Tenth Judicial District, Fergus County, as a delinquent youth or a youth in need of supervision and was accused of committing the offense of Deliberate Homicide. The Fergus County Attorney moved to transfer the case to Adult Criminal Court. A hearing was held on this motion and on February 11, 1994, the court entered its Findings of Fact and Conclusions of Law and Order which transferred this case to Adult Criminal Court. T.N. appeals this order.

Did the District Court abuse its discretion in transferring T.N. from Youth Court to the Adult Court of the Tenth Judicial District?

3

The court noted that one psychologist and one psychiatrist had testified to the mental condition of T.N. and that although they disagreed on certain aspects of T.N.'s rehabilitation, both doctors agreed that T.N. needed a structured residential setting in order for rehabilitation to occur. Both doctors agreed that Yellowstone Treatment Center in Billings would be adequate and Pine Hills School for Boys would not.

Also in its findings, the court noted that Dr. Rich, a psychiatrist and the director of the Deaconess Psychiatric Center in Billings, believed that it would take T.N. a one year period to be rehabilitated at Yellowstone Treatment Center (Yellowstone). The court did not find this testimony to be as credible as that of Dr. Gumper, a clinical psychologist at Deaconess Medical Center in Billings. The court found that it was more credible, according to Dr. Gumper, that T.N. would need several years of treatment in a structured residential setting, although there is no way to tell exactly how much treatment T.N. would need. The court agreed in its findings with Dr. Gumper's assessment that it would be advisable to be able to require residential treatment of the youth beyond the time period that would be available through the youth facilities, but the youth court's jurisdiction is limited. Because of the limitations placed upon the youth court for youth past the age of 19, Dr. Gumper, and the court, had serious reservations that the youth system would be able to require residential treatment beyond the age of 19 if needed.

Further, the court found that both doctors agreed that T.N.

4

would be resistant to treatment, possibly lengthening the time that he would be required to be in treatment. The court also noted that Dr. Gumper stated that the ability to secure T.N. in a locked environment would be advisable. The court further found that Yellowstone does not have the security necessary and Pine Hills has no facilities for T.N.'s rehabilitation.

The court, therefore, found that substantial evidence existed to show that T.N. killed his father in an aggressive, violent, or premeditated manner and that the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by the juvenile facilities. The court further explained that the youth system is seriously limited in the time that it could provide for T.N.'s treatment.

Appellant argues that the ruling law on transfer of juveniles to adult court is § 41-5-206, MCA:

> Transfer to criminal court. (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of the prosecution to the district court if:
> . . . .
> (d) the court finds upon the hearing of all relevant evidence that there is probable cause to believe that:
> (i) the youth committed the delinquency act alleged;
> (ii) the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and
> (iii) the alleged offense was committed in an aggressive, violent, or premeditated manner.

T.N. concedes that the only part of this statute that is in dispute is subsection (d)(ii)--the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities. T.N. argues that there was

5

no evidence to support the court's determination that T.N. was a serious threat to the community or that T.N. required treatment beyond that of the youth facilities. T.N.'s argument here is that he cannot be transferred to adult court simply because the crime he committed was a serious one.

The state argues that sufficient evidence exists to support the court's findings.

The standard of review on appeal of a youth court order transferring a matter to district court is whether the youth court abused its discretion. In re J.A. (1992), 255 Mont. 214, 841 P.2d 1130. This court will not find abuse of discretion where there is substantial evidence to support the findings of the youth court. J.A., 255 Mont. at 216. Nor will this Court resolve conflicts in evidence for it is the trial court's domain to assess the demeanor and credibility of witnesses. J.A., 255 Mont. at 216. When considering the individual findings of that court we review the findings to to see if they are clearly erroneous according to the three-prong test we set out in Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. While we have clarified that we will utilize a clearly erroneous standard in reviewing court findings of fact, the first prong of the clearly erroneous test remains whether substantial evidence supports the court's findings. J.A., 255 Mont. at 216.

An extensive review of the record indicates that two expert witnesses testified concerning the mental state of T.N. and his ability to be rehabilitated within the youth system. Also

testifying was Sheila Rebich (Rebich), a clinical social worker for Pine Hills School for Boys and Michael Otto (Otto), the chief juvenile probation officer for the Tenth Judicial District of the State of Montana.

Both Dr. Gumper and Dr. Rich agreed that Pine Hills School was not a proper placement for T.N. because the school did not provide the rehabilitation that T.N. requires. This was further borne out by the testimony of Ms. Rebich who also stated that the school would not be able to provide serious rehabilitation.

Both Dr. Gumper and Dr. Rich agreed that Yellowstone Treatment Center in Billings would be an adequate placement. However, Dr. Gumper testified the youth system could only provide residential arrangements for T.N. up to the age of 19. Further, Yellowstone placements usually last from 10 to 14 months. If T.N. were to be sent there, Yellowstone would have to make special arrangements for T.N. Otto testified that officials of the school had already been contacted about placement of T.N. and had stated that Yellowstone would probably not accept T.N. If Yellowstone does not accept T.N. the only other placement would be Pine Hills, an unsuitable placement according to everyone who testified.

Of particular significance is the length of time that T.N. may require treatment. Dr. Gumper was very specific in stating that it would be preferable to have the option of providing residential treatment for T.N. past the age of 19. However, such an arrangement is impossible under the system in Montana. Otto testified that the court would lose jurisdiction of T.N. once it

7

placed him in a facility.  The Department of Family Services would assume jurisdiction of T.N. after the court's initial placement. Technically, the Department would have control of T.N. until age 21; however, there could be no residential placement anywhere beyond age 19.

The court made a point throughout the hearing to ask questions on its own.  It questioned Dr. Gumper at one point as to whether the youth system would provide the extended treatment that Dr. Gumper stated that T.N. needed.  Dr. Gumper answered that the only way the youth system could adequately rehabilitate T.N. would be if supplemental funding were to be provided to the institution in which T.N. was finally placed.  There was no evidence presented at the hearing that additional funding could or would be provided either to Pine Hills or Yellowstone.

We conclude that there was substantial evidence from which the court could have determined that the youth system was inadequate to handle T.N.'s needs.

On the issue of whether T.N. posed a threat to the community, Dr. Gumper spoke to this at some length stating that a possibility existed that once T.N. became attached to someone in a close relationship, he may feel pressured into the same kind of violent behavior.  Both doctors testified that T.N. had not shown remorse about the killing and had not shown any signs of coming to terms with the seriousness of what had happened.  While both Dr. Gumper and Dr. Rich felt it unlikely that there would be another violent occurrence, neither of them ruled it out.

8

T.N argues that what he needs is rehabilitation and not incarceration.  The fact that this action is being sent to the criminal  justice system does not preclude rehabilitation and mandate  incarceration.  The court has other options available to it should T.N.  be found guilty of this crime.

We conclude that the record establishes that the court had substantial evidence before it that T.N. could pose a threat to the community if not removed from society at least for the period of time needed for rehabilitation.

We hold that. the District Court did not abuse its discretion in transferring T.N.  from Youth Court to the Adult Court of the Tenth Judicial District.

Affirmed.

_____
                                              Justice

We Concur:

_____

_____

_____

_____
                              Justices

October 4, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

JON A. OLDENBURG
Attorney at Law
505 West Main Street, Suite 309
Lewistown, MT 59457

HON. JOSEPH P. MAZUREK, Attorney General
Cregg Coughlin, Assistant
Justice Bldg.
Helena, MT 59620

THOMAS P. MEISSNER
Fergus County Attorney
Fergus County Courthouse
Lewistown, MT 59457

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy