No. 04-629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 15

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

VINCE WHITEMAN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and for the County of Big Horn, Cause No. DC 04-12,
The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            William F. Hooks, Attorney at Law, Helena, Montana

            Matthew J. Wald, Attorney at Law, Hardin, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

            Calvin Wilson, Big Horn County Attorney; Nancy L. Rohde, James
Yellowtail, Deputy County Attorneys, Hardin, Montana

Submitted on Briefs:  January 4, 2005

Decided:  February 1, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Defendant Vince Whiteman (Whiteman), a minor, appeals from the decision of the Twenty-Second Judicial District Court, Big Horn County, to allow prosecution of his case in district court. Whiteman raises the sole issue of whether the District Court erred when it determined, based upon the brutal nature of the offense and the best interests of the community and of Whiteman, that Whiteman should stand trial in District Court.    We affirm.

¶2     At the outset, we note Whiteman appears to have abandoned his claim that the statute permitting the District Court to transfer a case back to the Youth Court, § 41-5-206(3), MCA, violated his due process rights based upon its failure to assign the burden of proof. In any event, the District Court clearly assigned the burden of proving that Whiteman should stand trial in District Court to the State in this case.  We will avoid hypothesizing regarding possible permutations and incarnations not presented. *New York v. Farber* (1982), 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (citing the traditional rule that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court").

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     The State alleges that on February 6, 2004, Whiteman, using a baseball bat, beat and killed Wayne Not Afraid (Not Afraid) and severely injured Floyd Grant (Grant).  Whiteman was thirteen years old at the time of the beatings.  Earlier that day, Whiteman and two other

males, Dietrich Shoulderblade (Shoulderblade), and John Knows His Gun (Knows His Gun), had engaged in a verbal confrontation with Not Afraid and Grant. Cheranda Not Afraid, decedent Not Afraid's niece, told police that shortly after her grandmother diffused the verbal confrontation, she overheard Whiteman, Shoulderblade and Knows His Gun discussing a plan to assault Not Afraid and Grant. They devised a plan to have Knows His Gun lure the two men out of their trailer where Whiteman and Shoulderblade would attack them with a bat. Although Cheranda did not witness the attack, she told police she saw Whiteman poised with a bat outside her uncle's trailer shortly before the assault.

¶4 In subsequent interviews with police, Knows His Gun admitted the males had conceived of the plan to ambush Not Afraid and Grant and that upon confronting the two men, Whiteman had struck Not Afraid and Grant each in the head with a baseball bat. Knows His Gun stated he did not see Whiteman's first blow to Grant, but asserted he heard it and saw Grant falling backwards without making any effort to catch himself. He also claimed Not Afraid then rushed towards Whiteman at which time Whiteman struck Not Afraid with the baseball bat, knocking him to the ground. Once Not Afraid was on the ground, Whiteman returned to Grant and inflicted more blows to his head with the baseball bat. Grant appeared to be unconscious as he made no effort to protect himself. Whiteman then returned to Not Afraid and hit him in the head several more times with the bat.

¶5 The blood spatter found at the crime scene by the police and the physical appearance of Not Afraid and Grant proved consistent with Knows His Gun's report. The police also recovered a pair of bloody pants from Whiteman's trailer and a wooden bat covered with a

3

large amount of blood.

¶6     On February 18, 2004, the State filed a motion in Youth Court for leave to file a Petition of Delinquency against Whiteman. The motion alleged Whiteman had committed acts that, if he were an adult, would have constituted the offenses of deliberate homicide and aggravated assault. The Youth Court granted the State leave to file a petition for delinquency and the State filed it on February 19, 2004.

¶7     The next day, February 20, 2004, the State filed in District Court a notice of its intent, pursuant to § 41-5-206(1), MCA, to file an Information against Whiteman in district court and a motion to transfer his case to district court. The State explained that although the statute allowed it to file an Information against Whiteman directly in district court, it believed that based upon *State v. Butler*, 1999 MT 70, 294 Mont. 17, 977 P.2d 1000, a transfer hearing must occur before filing an Information against a minor in district court. The State then filed its motion for leave to file an information directly in the District Court.

¶8     Whiteman filed a separate motion in District Court on June 11, 2004, requesting the court declare the transfer statute, § 41-5-206(3), MCA, unconstitutionally vague and that the statute's failure to allocate which party carried the burden of proof denied him due process. The District Court eventually assigned to the State the burden of proof under the transfer statute based on the State's request.

¶9     Whiteman filed a brief in support of his position that the case should be tried in Youth Court on June 24, 2004. The next day, the District Court conducted a hearing pursuant to § 41-5-206(3), MCA, to determine whether Whiteman's case should be tried in youth court

4

or district court. On July 23, 2004, the District Court issued its first order in which it denied Whiteman's request that it declare the youth transfer statute unconstitutional. The court entered its findings of fact, conclusions of law, and a separate order on August 16, 2004. This second order granted the State's motion for leave to file an Information against Whiteman directly in district court. This appeal followed.

¶10    This Court reviews a district court's decision for an abuse of discretion regarding whether a juvenile should be prosecuted in youth court or district court. *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, ¶ 12, 982 P.2d 421, ¶ 12 (citing *Matter of J.K.C.* (1995), 270 Mont. 342, 344, 891 P.2d 1169, 1171). "With regard to specific findings of fact relied on by the [district] court in transferring the case, the standard of review is whether such findings are clearly erroneous." *Spina*, ¶ 12 (citing *Matter of J.D.W.* (1994), 267 Mont. 87, 91, 881 P.2d 1324, 1327). A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of evidence, or if our review of the record convinces us that the district court made a mistake. *Spina,* ¶ 12 (citations omitted). We review a district court's conclusions of law to determine whether its conclusions are correct. *Spina*, ¶ 12.

¶11    The State may file a motion for leave to file an information directly in district court under certain circumstances. These circumstances include a situation in which the youth is twelve or more years of age, the alleged criminal conduct falls within a specified category of offenses, including deliberate homicide as defined in § 45-5-102, MCA, and the court finds, upon considering all the relevant evidence, probable cause to believe the youth has

5

committed the alleged offense. Section 41-5-206(1), MCA. Once the State submits the case to the district court, the district court may not transfer the case to the youth court unless it finds by a preponderance of the evidence:

> (a) a youth court proceeding and disposition will serve the interests of community protection;
>
> (b) that the nature of the offense does not warrant prosecution in district court; and
>
> (c) it would be in the best interest of the youth if the matter was prosecuted in youth court.

Section 41-5-206(3)(a)-(c), MCA.

¶12    As a preliminary matter, Whiteman asserts that the District Court, in considering these factors, contemplated only selective factual allegations, proposed by the State and adopted verbatim by the court, that falsely portray the nature of the alleged incident. We need not address Whiteman's supposition that the District Court's findings are clearly erroneous as a result of their "verbatim" adoption. We conclude the District Court made comprehensive findings of fact that intimately detailed the testimony offered at trial. "Findings and conclusions that are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and are supported by evidence will not be overturned simply because the trial court relied on proposed findings and conclusions submitted by counsel." *Steve v. Smith* (1993), 261 Mont. 419, 439, 863 P.2d 1000, 1012 (citation omitted).

¶13    We will address, however, Whiteman's specific allegations of clear error in the District Court's findings of fact and conclusions of law as they relate to the transfer statute. Whiteman first claims the District Court erred in determining that the nature of his offense

warranted prosecution in district court. *See* § 41-5-206(3)(b), MCA. Specifically, Whiteman asserts the court relied upon the nature of the allegations, rather than the nature of the offense, in determining whether the attack on Not Afraid and Grant was deliberate, and thus warranting prosecution in District Court. Whiteman contends the court ignored significant evidence, including statements in the State's Affidavit suggesting mitigating factors, that contradicted the State's allegations that the attack of Not Afraid and Grant had been planned.

¶14 We conclude that substantial credible evidence supports the findings that probable cause existed for the charge of deliberate homicide and thus prosecution in district court. *See* Section 41-5-206(3)(b), MCA. The District Court received testimony at the hearing from both parties concerning the basis for the charges. Between the testimony presented, including eye-witness accounts, the court found more reliable the reports by Detectives Dalton and Bahm that characterized the attack as premeditated and vicious. The court stated, "[b]oth Detective Dalton and Detective Bahm were called as witnesses for the State. Their respective testimony at hearing confirmed the substantive allegations of the *Affidavit* . . . ." Having found "no allegations or assertions currently before the Court suggesting that the death of Wayne Not Afraid and severe beating of Floyd Grant could in any way be characterized as justifiable or the result of negligent rather than deliberate conduct," the court concluded, "based not only on the seriousness of the alleged offenses but also on what appears to be the premeditated, violent, and deliberate character of the conduct resulting in the alleged offenses, that the nature of the offenses warrants prosecution in the district court

7

in the adult system." *See* Section 41-5-206(3)(b), MCA.

¶15 As this Court has recognized, "[i]t is within the domain of the trial court to resolve conflicts in the evidence based on its assessment of the demeanor and credibility of the witnesses before it, and this Court will not resolve conflicts on appeal." *Spina*, ¶ 24 (citing *Matter of T.N.* (1994), 267 Mont. 81, 85, 881 P.2d 1329, 1332). Therefore, we conclude, based on the evidence presented at the transfer hearing, the District Court did not err when it determined the testimony of Detectives Dalton and Bahm supplied probable cause that Whiteman committed the offense and that the nature of the offense warranted prosecution in district court.

¶16 Whiteman, pointing to § 41-5-206(3), MCA, next contends the District Court improperly relied only upon the State's witnesses in determining whether youth court proceedings would serve the interests of the community and Whiteman. Whiteman asserts the absence of any criminal history and the testimony of three of his former teachers as well as a psychologist established that he does not present a danger to the community. Further, Whiteman maintains the youth court's dispositional options included facilities designed to rehabilitate youths that would be more therapeutic and thus better suited to his interests than those offered in the adult prison system.

¶17 We conclude once again that sufficient evidence supports the District Court's findings that a youth court proceeding and disposition would not serve the interests of the community or promote Whiteman's rehabilitation. The District Court received testimony at trial from both parties concerning the interests of the community and of Whiteman. Between the

8

testimony presented, including three of Whiteman's teachers, a psychologist, and two officers from the Department of Corrections, the court found more substantive the testimony of Officer Pamela Bunke, an administrator for the Department of Corrections, and Officer Jack Lane, a probation officer. Officers Bunke and Lane both testified to the limited resources available to the youth court in handling young violent offenders like Whiteman as well as the continuity to which Whiteman's case would receive in the adult system. Further, both Officers Bunke and Lane testified that Whiteman's rehabilitation would be better suited to the adult system.

¶18 The District Court determined that youth court proceedings would limit the dispositional options to juvenile correctional or treatment facilities and only for the limited time frame of the youth court's jurisdiction. "Such limitations," the court reasoned, "do not serve the interest of the community protection as does the more extensive sentencing options available to the district court through the adult system." The court also concluded, "[n]o one reasonably disputes that it is in the offenders' best interests that they be held accountable for their actions . . . The broader options available to the district court in adult proceedings to hold offenders accountable provide the Court with greater ability to impose the appropriate level of accountability . . . ."

¶19 The trier of fact resolves conflicts in the evidence before it, and this Court will not reevaluate this same evidence on appeal. *Spina*, ¶ 30. Despite the testimony of three of Whiteman's teachers describing him as intelligent and respectful and a psychologist who believed Whiteman just needed more structure, sufficient credible evidence supports the

9

District Court's findings that a youth court proceeding and disposition would not serve the interests of the community or promote Whiteman's rehabilitation. *See* Section 41-5-206(3)(a) and (c), MCA. We thus conclude that the District Court's findings and conclusions that prosecution of Whiteman in youth court would not serve the best interests of the community or Whiteman are not clearly erroneous. Accordingly, we hold that the District Court did not abuse its discretion in determining that Whiteman should be tried in the District Court.

¶20 For the foregoing reasons, we affirm the District Court.


/S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE