FILED

08/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0618

DA 21-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 167

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

AUSTIN TYLER JOHNSON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 19-1553
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Layla Turman, Kindred Legal, PLLC, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bree Gee, Assistant
Attorney General, Helena, Montana

      Scott Twito, Yellowstone County Attorney, Laura Watson, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  June 21, 2023

Decided:  August 31, 2023

Filed:

_____
                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Austin Johnson (Johnson) appeals the denial of his motion to transfer his case to Youth Court entered in the Thirteenth Judicial District Court, Yellowstone County. We reverse.

¶2 We restate the issue on appeal as follows:

> *Whether the District Court erred by denying Johnson's request to transfer his charges to Youth Court.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 In December 2019, the State charged Johnson with one count of Sexual Intercourse without Consent, one count of Sexual Abuse of Children, and one count of Sexual Assault, all felonies. Pursuant to § 41-5-206(3), MCA, the State filed the information in the District Court. The charges arose from Johnson's non-consensual sexual contact with an eleven-year-old nonverbal autistic girl, C.N, in August 2019. Johnson had C.N. undress, touched her, digitally penetrated her, and took video and photographs with his cellphone. Johnson had turned 17 years old one month before the incident, which occurred after C.N.'s mother left C.N alone with Johnson while she went to the store. When the mother returned, C.N. was upset, referenced her "pee-pee" and "pictures," and said she "sucked [Johnson's] pee-pee." C.N.'s mother confronted Johnson and found a video on his cellphone depicting him "instructing C.N. to spread herself while she was bent over," and touching her anus and genitals. During the ensuing investigation, images were recovered from Johnson's cellphone depicting Johnson touching C.N.'s breast and C.N. naked on the toilet. A video

2

was also recovered depicting Johnson's hand on C.N.'s bare buttocks and a video of Johnson digitally penetrating C.N.

¶4    The District Court held a hearing in June 2020 pursuant to § 41-5-206, MCA, to determine if the case should be transferred to youth court. Johnson called Chief Juvenile Probation Officer Tara French (Officer French), Adult Probation Officer Paul Hawkins (Officer Hawkins), and licensed clinical social worker Michael Sullivan (Sullivan). Sullivan, who was qualified as an expert witness in the areas of forensic evaluations—including sexual offender and juvenile risk assessments—is a member of the Montana Sexual Offender Treatment Association and estimates he has performed roughly 800 psychosexual evaluations for courts. When conducting a psychosexual evaluation, Sullivan uses several tests which, together, comprehensively assess the "individual emotionally, behaviorally, psychologically[,] and sexually." Administered together, Sullivan testified they provide a "well rounded picture of the subject." Sullivan evaluated Johnson over two days and concluded Johnson "has a good understanding of appropriate and inappropriate sexual behavior." Johnson "did not present with objective sexual interests to prepubescent children of either sex" and displayed a "non-deviant profile." Sullivan testified that Johnson "scored very low" on his risk of reoffending and opined, regarding the nature of the offense, that Johnson's and the community's needs could be "adequately addressed through the services provided though Youth Court supervision." While acknowledging that the details of the alleged offense "can appear rather egregious," Sullivan testified, "I don't believe there's really anything about the alleged conduct which would indicate that he's not appropriate for Youth Court supervision . . . ." Finally,

3

Sullivan testified that it was clear the offense was an "impulsive act" and that the offense was committed in a very brief period of time. Sullivan testified Johnson struggles in relationships and does not perceive himself as having a high level of acceptance from females or socially in general. Sullivan testified that the offense was situational and not predatory, and that there was no indication of pedophilia or other deviant interests.

¶5    Juvenile Probation Officer French testified that she first met Johnson at his detention hearing and, at the time of the transfer hearing, had known him for ten months. Prior to the transfer hearing, Johnson had voluntarily enrolled in sexual offender treatment. French personally provided Johnson's pre-trial supervision and indicated that Johnson had no prior juvenile record. French indicated Johnson lives alone with his mother with whom he gets along well, and that he is the primary provider of food and transportation because of his mother's medical needs. Johnson worked in a nursing home and restaurant and brings in a large portion of the income for the family. French testified that while on release, Johnson has been "absolutely" compliant with all conditions and has always asked for permission before doing things like getting a haircut or going to a job interview. "[I]n the last ten months there hasn't been one question of where he's been . . . ." French testified she has a specialty caseload consisting of only ten juvenile sex offenders. Also, French explained that if Johnson had trouble paying for treatment, then Youth Court could pay to ensure he continues treatment. Johnson opined that a Youth Court transfer would best serve Johnson's interests while protecting the community.

¶6    Johnson also called Officer Hawkins from Adult Parole and Probation who testified that while there are specialty caseloads for sex offenders, the typical caseload is between

4

80 and 100 individuals. Moreover, adult probation would likely not pay for treatment, GPS monitoring, or a drug patch, and that offenders are encouraged to take care of their own responsibilities.

¶7 The State called Yellowstone County Attorney's Office victim witness coordinator Allison VanDyke (VanDyke) but did not otherwise present witness testimony. VanDyke testified to explain why C.N. and her family were not present at the hearing but did not comment on the appropriateness of a Youth Court transfer. A second hearing was held in August 2020 to receive additional information. There, the State conveyed C.N.'s mother's opposition to a Youth Court transfer and her belief that Johnson should receive an adult sentence. Other than presenting testimony that C.N.'s mother objected to a transfer, the State presented no evidence on the factors relevant to transferring a youth set forth in § 41-5-206, MCA.

¶8 The District Court found transferring the case to Youth Court would be in Johnson's best interests and would serve the interests of community protection. Regarding § 41-5-206(3)(c), MCA—whether "it would be in the best interests of the youth if the matter was prosecuted in youth court"—the court held:

> Financial assistance with sexual offender treatment or monitoring devices (GPS) could be better facilitated by juvenile probation. If the Defendant was convicted, a youth court disposition could also be less severe than a sentence following an adult district court conviction. Finally, registration would be discretionary with a youth court disposition.

Regarding § 41-5-206(3)(a), MCA—whether "a youth court proceeding and disposition will serve the interests of community protection"—the court held:

5

The Court observes that Officer French who has a caseload of five [to] ten juvenile sex offenders would supervise the Defendant if the Court granted transfer. In contrast, if the Court denied transfer, an adult probation and parole officer with a caseload of around 60 offenders would supervise the Defendant. Community protection (as well as the Defendant's best interests) are served by having a supervising officer who can devote more time and attention to the Defendant due to having a much smaller caseload.

¶9 However, it concluded based on the Information and affidavit filed in support that under § 41-5-206(3)(b), MCA—the nature of the offense—the allegations were "serious and troubling" and that "strongly support[ed] denying Defendant's motion to transfer." Reasoning that § 41-5-206(3), MCA, was in the conjunctive and that Johnson had failed to meet his burden on subsection (b), the District Court denied Johnson's transfer motion. Johnson ultimately pleaded guilty to two amended counts of felony sexual assault. On each count, the District Court sentenced Johnson to twenty years with fifteen years suspended, to be run concurrently. The District Court also designated Johnson a Level I Sexual Offender.

¶10 Johnson timely appeals the denial of his Youth Court transfer request.

## STANDARD OF REVIEW

¶11 We review a district court's decision as to whether a juvenile should be prosecuted in youth court or in district court for an abuse of discretion. *State v. Whiteman*, 2005 MT 15, ¶ 10, 325 Mont. 358, 106 P.3d 543. A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Talksabout*, 2017 MT 79, ¶ 8, 387 Mont. 166, 392 P.3d 574. We review a district court's conclusions of law to determine whether its conclusions are correct. *Whiteman*, ¶ 10. We review for clear error the specific findings of fact on

6

which the district court relied in making its transfer decision. *Talksabout*, ¶ 8. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Whiteman*, ¶ 10. We view the evidence in the light most favorable to the prevailing party when determining whether a district court's findings are supported by substantial credible evidence. *Talksabout*, ¶ 8.

**DISCUSSION**

¶12    Section 41-5-206(2), MCA, requires a county attorney to petition for leave to file an information in district court if a youth was 17 years old at the time of the conduct and is alleged to have committed one of several enumerated offenses, including sexual assault. Once leave to file the information is granted, "the district court shall conduct a hearing to determine whether the matter must be transferred back to the youth court," unless waived. Section 41-5-206(3), MCA. The district court may only transfer the case to youth court if it finds, by a preponderance of the evidence, that:

> (a) a youth court proceeding and disposition will serve the interests of community protection;

> (b) the nature of the offense does not warrant prosecution in district court; and

> (c) it would be in the best interests of the youth if the matter was prosecuted in youth court.

Section 41-5-206(3), MCA. "Each of these factors must be met in order to transfer the case to youth court." *Talksabout*, ¶ 11 (citing § 41-5-206(3), MCA). Generally, in analyzing these factors, a district court is in the best position to weigh the evidence and

7

"resolve[] conflicting evidence before it." *State v. Dietsch*, 2013 MT 245, ¶ 16, 371 Mont. 460, 308 P.3d 111.

¶13    On appeal, Johnson notes the District Court found he met his burden of proving a youth court transfer would serve his interests and the interests of community protection. He challenges the District Court's legal conclusion that a youth court transfer could be denied based solely on the perceived severity of the offense. He contends that the charge of sexual intercourse without consent will always involve egregious facts; therefore, even when the interests of a defendant and the interests of community safety support a youth court proceeding, a similar charge will always be sufficient to deny the transfer. As a result, Johnson contends the other two factors become meaningless. Finally, Johnson contends that the District Court failed to distinguish his case from other similar cases before the Court considering the uncontested evidence. In particular, Johnson noted the court did not consider how testimony showing his low risk of reoffending, his nonpredatory motivation, and the witness's treatment recommendations distinguished his case from others where the youth was found to present a danger to the community and had higher risk of reoffending. Instead, he asserts the court only considered the aggravating details of the offense, giving undue weight to the offense itself.

¶14    We addressed a similar argument in *Talksabout*, in which the defendant was charged in district court in two separate cases with sexual intercourse without consent. *Talksabout*, ¶ 1. In both cases, the defendant was at an underage drinking party and had sexual contact with underage victims after each said no. At the time of the offense, the defendant was 17 in the first case and 16 during the second, while the victims were respectively 14 and 12.

8

The district court denied the defendant's transfer request in the first case after finding the interests of community protection and the nature of the offense warranted district court prosecution and denied the request in the second case because the defendant failed to show all three factors. We affirmed both denials on appeal. *Talksabout*, ¶¶ 1-5, 39.

¶15     As to the first transfer hearing, we explained that the district court did not abuse its discretion in concluding that the interest of community protection weighed against transfer because the defendant's "age, home environment, conduct while on release, minimization of his alleged conduct, and need for more structured supervision if convicted, make[] the District Court a more appropriate forum" for supervision. *Talksabout*, ¶ 21. As to the nature of the offense factor, the defendant in *Talksabout* claimed there was no substantial evidence supporting the district court's finding and that the district court failed to consider "mitigating facts" such as his developmental immaturity. *Talksabout*, ¶¶ 16-18.

¶16     We explained that when analyzing whether the nature of the offense warrants district court prosecution, a district court "must look to the nature of the allegations—and not just the *seriousness* of the offense." *Talksabout*, ¶ 20 (citing *Whiteman*, ¶¶ 13-15, emphasis in original). We held the district court did not exceed the bounds of reason by concluding this factor was not met, noting that the defendant "was accused of undressing and forcibly having sexual intercourse with an intoxicated fourteen-year-old after repeatedly being told no." *Talksabout*, ¶ 21. Talksabout contended that the court failed to adequately consider Dr. Smelko's testimony in analyzing the nature of the offense factor. *Talksabout*, ¶ 17. We explained that the court did not err in considering attributes of the offender when evaluating the nature of the offense factor, stating:

9

The evidence strongly indicated that, if convicted, Talksabout would need sex offender treatment. Talksabout expressed unwillingness to enter treatment, however, and denied that his conduct 'sexually offended against" A.C. Even though he had not yet admitted to the offense, *Talksabout put his evidence before the court through Dr. Smelko, and the District Court did not clearly err in considering it for purposes of evaluating the nature of the offense* and the interests of community protection.

*Talksabout*, ¶ 21 (emphasis added).

¶17 We affirmed the district court's conclusion that the nature of the offense factor in the second transfer hearing warranted district court prosecution, noting that the defendant "knew the victim's age, removed her clothes, the victim protested, [the defendant] persisted, and forcibly had sexual intercourse with the 12-year-old victim," and that this incident occurred a month before the first assault. *Talksabout*, ¶ 26. In particular, we noted the similarity of the two offenses and the evaluating doctor's new opinion following additional testing of the defendant that he "was impulsive, could be expected to entertain potentially dangerous risks to himself and others—including sexual behaviors—and has a pattern of sexually abusive behavior." *Talksabout*, ¶ 29. Although Dr. Smelko's additional testing focused entirely on Talksabout's attributes as an offender, we nonetheless concluded the evidence informed the court's consideration of the nature of the offense factor. We held it provided "additional evidence . . . [that] heightened the District Court's concerns and provided further evidence substantiating its findings on those *two* statutory factors [nature of the offense and community protection]." *Talksabout*, ¶ 29 (emphasis added).

10

¶18 In *Talksabout*, we also elaborated on when the nature of the offense warranted district court prosecution by discussing our previous cases analyzing that factor. *Talksabout*, ¶ 23 (discussing *Whiteman* and *Dietsch*). In *Whiteman*, we rejected the defendant's argument that in its analysis of the nature of the offense factor, the district court failed to consider evidence of mitigating factors that contradicted the allegations that the attack was planned. *Whiteman*, ¶ 13. We found substantial credible evidence supported district court prosecution, noting testimony from detectives "characterize[ing] the attack as premeditated and vicious," and the absence of evidence suggesting the attack was justifiable or negligent. *Whiteman*, ¶ 14. We agreed with the district court that "based not only on the seriousness of the alleged offenses, but also on what appears to be the premeditated, violent, and deliberate character of the conduct resulting in the alleged offenses, that the nature of the offenses warrants prosecution in the district court in the adult system." *Whiteman*, ¶ 14. Hence, in *Whiteman*, we approved of the court's reliance on evidence about attributes particular to Whiteman—his lack of impulsivity, the viciousness of the attack, his deliberation, and the lack of negligence or justification—to support its conclusion that the nature of the offense warranted prosecution in district court. *Whiteman*, ¶ 14.

¶19 Next, in *Dietsch*, which also involved a sexual offense, we affirmed the district court's conclusion that the defendant failed to meet his burden on all three factors. *Dietsch*, ¶¶ 15-16. As to the nature of the offense factor, we explained that:

> The District Court also received testimony at the transfer hearing concerning the nature of the offense. The District Court heard from a sexual offender evaluator (Christopher Quigley), a clinical psychologist

11

(Dr. Tessa Reed), and a police detective (Jesse Jessop). The District Court found more substantive the testimony of the State's witnesses. The Court concluded that Dietsch's contact with the victim's mother showed a "high lack of empathy" and that Dietsch had demonstrated a "a highly significant familiarity about sex with underage girls in his community." . . . Sufficient credible evidence supports the District Court's finding that the nature of the offense does not warrant a youth court proceeding and disposition.

*Dietsch*, ¶ 16. Thus, once again, we observed that evidence of the *offender*'s attributes inform the nature of the offense inquiry.

¶20 We noted in *Talksabout* that, as in *Whiteman* and *Dietsch*, "evidence presented to the District Court regarding the § 41-5-206(3), MCA, factors conflicted." *Talksabout*, ¶ 24. Importantly, the conflicting evidence in *Talksabout*, *Whiteman*, and *Dietsch* included psychological evidence of the offender's characteristics and attributes. Thus, while a court may not be convinced by a defendant's mitigating evidence, our jurisprudence undisputedly holds that psychological evidence and other evidence relevant to only the offender informs consideration of the nature of the offense factor. While this evidence may be useful in considering what the best interests of the youth are under subsection (c), the evidence may also inform the nature of the act or offense factor and whether it was the result of the predatory, deliberate, impulsive, situational, or negligent actions of the defendant.[1] In *Talksabout*, *Whiteman*, and *Dietsch*, psychological evidence of the youth's character in the context of the nature of the offense factor *reinforced* that proceedings in

---

[1] Contrary to the Dissent's interpretation that factor (c) "requires consideration of the best interests of the *youth* . . .," and that the evidence, accordingly, fits under (c) because it is about the youth, Dissent, ¶ 11 (emphasis in original), the inquiry under (c) more specifically is a consideration of the *best interests* of the youth, which clearly focuses on the youth's welfare and not attributes of the youth that our case law has held informs the nature of the act or offense committed.

12

adult court were appropriate. It would be unjust to conclude, as the Dissent does, that the same type of evidence cannot be considered to *support* a finding and conclusion that the nature of the offense factor warrants proceedings in Youth Court.

¶21 Significantly, our jurisprudence, consistent with the United States Supreme Court, has held that "juveniles are 'constitutionally different from adults in their level of culpability . . . .'" *State v. Keefe*, 2021 MT 8, ¶ 13, 403 Mont. 1, 478 P.3d 830, quoting *Montgomery v. Louisiana*, 577 U.S. 190, 213, 136 S. Ct. 718, 736 (2012). These differences result from children's "diminished culpability and greater prospects for reform," and are apparent in three primary ways:

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable . . . to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

*Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 2464 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 569-570, 125 S. Ct 1183, 1195 (2005) (citations omitted)). *See also Steilman v. Michael*, 2017 MT 310, 389 Mont. 512, 407 P.3d 313.

¶22 While *Keefe* and *Steilman* dealt with the propriety of sentencing youths to life without parole, the collective thrust of their teachings and of Supreme Court jurisprudence (*Montgomery*, *Miller*, *Roper*, and *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010) (banned life without parole for juveniles who committed a nonhomicide crime)) firmly

13

establishes that youths are constitutionally different from adults and, therefore, the characteristics of youth cannot be ignored during a youth's prosecution.

¶23 The very essence of a transfer hearing involves a decision of whether a youth should be prosecuted as an adult. In other words, recognizing under our precedent that a youth is constitutionally different from an adult, should the youth nonetheless remain in district court where he or she will be prosecuted and sentenced as an adult. Although the Legislature has set forth three factors to guide courts in their decisions, nothing in the plain language of the statute prevents a court from considering the youthfulness of the offender under any factor, nor does § 41-5-206(3), MCA, require courts to ignore well-established precedent mandating that youths be treated differently from adults. The Youth Court Act lists nearly two dozen felonies requiring an information be filed directly in district court for youths who are at least 16 years of age at the time of the offense. These offenses are the most serious offenses under Montana law and, absent consideration of the youth's individual characteristics and transient immaturity, will frequently dictate that the nature of the offense is serious and that factor (b) cannot be met. Because the Legislature has designated those offenders charged with these specific crimes be first treated as adults— even though they are youths—a major consideration under our precedent for transferring a case from adult court to youth court *must* be the extent to which the offense reflects the offender's youthfulness. An offender's youthfulness, social maturity, impulsivity, brain development, and other measures of maturity is an important, indeed vital, consideration in a transfer decision.

14

¶24 Montana courts have consistently considered evidence of all these attributes when making transfer decisions. Clearly, the Legislature has mandated that before a case can be transferred, the court must make findings and conclusions that the interests of the community will be protected, the nature of the offense does not warrant prosecution in adult court, and that it would be in the best interests of the youth to be in Youth Court. Section 41-5-206(3)(b), MCA. Equally clear, however, is that the Legislature did not mandate the *type* of evidence a court may consider when evaluating each factor. Nothing in the statutory language of factor (b), concerning the nature of the offense inquiry, precludes consideration by the court of whether the act reflects impulsivity, youthful immaturity, or situational opportunity. Nor has the Legislature precluded any such consideration anywhere else in § 41-5-206(3)(b), MCA. And to read such a restriction into the statutory language would be inconsistent with our case law. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Rather, the evidence presented as to each factor must be weighed and considered by the court and must support the court's conclusion under each factor by a preponderance for a transfer to occur. The Legislature has set forth the criteria for transfer, but it's the court's role to evaluate and decide the credibility of the evidence presented. Nothing in the statute hamstrings the court's analysis or dictates what evidence may be presented and considered for any particular factor. Accordingly, when a district court examines whether the "nature of the offense does not warrant prosecution in district court" § 41-5-206(3)(b), MCA, the district court is not required to chuck Montana

15

precedent or precedent of the Supreme Court explaining youth are "constitutionally different," rather the court must consider the extent the offender's transient immaturity informs each factor–including the nature of the offense factor. Particularly elucidating of an offender's transient immaturity are psychosexual evaluations prepared by expert witnesses.

¶25 Here, the record demonstrates the court did not adequately consider any of the evidence presented by Sullivan as applied to the nature of the offense factor. This evidence included Johnson's youthfulness; impulsivity; that the offense was not predatory but situational; that Johnson has a low risk of reoffending; and that Johnson was socially immature and felt he was not accepted by females. Unlike the conflicting evidence presented in *Talksabout*, *Whiteman*, and *Dietsch*, there was no conflicting evidence presented here on *any* of the factors, let alone the nature of the offense factor. The District Court relied solely on the *seriousness* of the offense, conflating it with the *nature* of the offense, and did not consider how other evidence of Johnson's attributes or characteristics informed the nature of the offense. Whereas in *Whiteman*, we specifically noted the absence of any mitigating facts or evidence suggesting the attack was anything other than deliberate, Johnson presented evidence from Sullivan that the nature of the offense arose from Johnsons' impulsivity and was situational. *Whiteman*, ¶ 14. The State's only rebuttal to this evidence was to offer to the court that the facts of the offense alone justified district court prosecution, stating,

> The nature of the offense would lend itself to the—this was a pretty abhorrent allegation against the youth, so I think it would—I guess I'd be remiss in making any other argument and indicating, the Court does have to find all three of those in

16

order to return it to Youth Court by a preponderance. The State's position was it was a direct file due to his age and the nature of the offense. So I would leave it with that, Your Honor.

¶26 Whereas in *Dietsch*, the defendant lacked empathy, was familiar with sex with underage girls, and was likely to reoffend regardless of where the charges were brought, here Johnson presented Sullivan's testimony that Johnson had "a good understanding of appropriate and inappropriate sexual behavior," he "did not present with objective sexual interests to prepubescent children of either sex," he "displayed a non-deviant profile," was a low risk to reoffend, the offense was situational rather than predatory, and Johnson's conduct resulted from his history of impulsivity and lack of social acceptance. *Dietsch*, ¶¶ 14, 16. Further, Sullivan explained that while the facts of the offense were egregious, he did not believe "anything about the alleged conduct . . . would indicate [Johnson is] not an appropriate candidate for Youth Court supervision," and that Johnson could complete treatment before the age of 21. Finally, in *Talksabout*, the district court rejected the defendant's mitigating facts, finding they suggested the victim's responsibility for the offense, and noted the defendant's unwillingness to enter treatment. *Talksabout*, ¶ 21. In contrast, the District Court made no similar findings regarding Johnson's mitigating evidence, and Johnson voluntarily underwent sex offender treatment prior to the transfer hearing and was on track to complete it before the age of 21.

¶27 Further, unlike *Talksabout*, *Whiteman*, and *Dietsch*, where the defendants failed to meet their burden on two or more factors, the District Court here denied Johnson's transfer request based solely on the nature of the offense factor. It is undisputed that the court concluded transferring Johnson's case to Youth Court would be in his best interest and the

17

interest of community protection. The court recognized Officer French's testimony that juvenile probation has greater financial resources for supervision and due to a lower caseload, is better positioned to supervise individuals than adult probation officers. It also recognized Officer French's testimony that Johnson was fully compliant with her directions, was a minimal risk to the community, and a transfer would best serve his interests while protecting the community.

¶28 While § 41-5-206(3), MCA, clearly provides that a district court may not transfer a proceeding to youth court unless it finds the nature of the offense does not warrant prosecution in district court, this Court must nonetheless conduct its appellate review of the district court's findings for clear error. A finding is clearly erroneous if not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Talksabout*, ¶ 8. We are convinced, based on our review of the record, that the District Court not only made a mistake but misapprehended the evidence presented by Johnson suggesting that the nature of the offense did not warrant district court prosecution, instead reaching its conclusion as to this factor based *purely* on the egregious facts of the offense—an offense which will virtually always, absent mitigating evidence, contain particularly egregious facts warranting district court prosecution. By failing to consider Johnson's mitigating and unrebutted evidence as to this factor, the District Court abused its discretion.

## CONCLUSION

¶29 The District Court's decision denying Johnson's motion to transfer to Youth Court is reversed. This matter is remanded to Youth Court for prosecution and disposition.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON

Justice Jim Rice, dissenting.

¶30 I believe our recent cases have failed to properly incorporate or emphasize the changes made by the Legislature to the transfer process, primarily by our repetition of generalized standards of review that do not reflect those nuances. That has led, in my view, to improper analyses under the statute, including the weighing or balancing of the statutory factors. *See* Opinion, ¶ 27. It has also led to elongated opinions that stray from the necessarily narrow inquiry the Legislature has established for this determination. *See* Opinion, ¶¶ 16-20.

¶31 Under the prior statutory scheme, all juvenile proceedings began in youth court. Provision was made for transfer of a youth case to district court upon satisfaction of certain conditions, but even then, the statute merely provided that the court "may" order the transfer, placing the ultimate decision completely within the discretion of the court:

> Montana's Youth Court Act authorizes the transfer of cases *from youth court to district court* under certain circumstances. The transfer statute sets forth the criteria which must be met before a transfer can be ordered . . . . Section 41-5-206, MCA. In the event the statutory requirements are met, the court "may" order the transfer. *Id. Thus, in the final analysis, the decision to transfer is within the court's discretion*.

*In re J.A.*, 255 Mont. 214, 215, 841 P.2d 1130, 1131 (1992). (Emphasis added.) Consequently, an abuse of discretion standard of review was "appropriate because, as discussed above, a transfer under Sec. 41-5-206, MCA, ultimately is left to the court's discretion." *In re J.A.*, 255 Mont. at 215-16, 841 P.2d at 1131.

¶32 In *In re T.N.*, 267 Mont. 81, 881 P.2d 1329 (1994), applying the 1993 version of § 41-5-206, MCA, which continued to employ the "may" discretionary language, we further clarified the standard of review by holding that "[t]his court will not find abuse of discretion where there is substantial evidence to support the findings of the youth court." *In re T.N.*, 267 Mont. at 84, 881 P.2d at 1332. Accordingly, a transfer decision premised upon correct factual findings of the statutory factors—whether granting or denying transfer—could not otherwise be challenged as an abuse of discretion. *See also In re J.K.C.*, 270 Mont. 342, 891 P.2d 1169, 1171 (1995) ("This Court will not find an abuse of discretion where there is substantial credible evidence to support the findings of the youth court.").

¶33 In succeeding years, the Legislature enacted extensive legislation to address serious crimes committed by juvenile offenders,[1] which significantly altered the law governing the relationship between youth and adult courts, including requiring prosecutors to seek leave to file directly into district court for certain offenses without first filing in youth court, and granting prosecutors the option of filing directly into district court on other offenses.

---

[1] Specifically, The Extended Jurisdiction Prosecution Act, Chap. 438, Laws of Montana 1995; The Montana Street Terrorism Enforcement and Prevention Act, Chap. 285, Laws of Montana 1997; and An Act Generally Revising the Youth Court Act, Chap. 550, Laws of Montana 1997.

20

*See, generally*, Chap. 550, Laws of Montana 1997. Correspondingly, the Legislature reversed the transfer process, providing for transfer of a case first filed in adult court back to youth court, upon certain statutory factors.[2] Critical here, the Legislature also completely revised the discretion that may be exercised by the courts in transfer decisions. First, the Legislature repealed the "may" language within § 41-5-206, MCA, upon which the Court had premised its multiple holdings that transfer decisions ultimately fell within the discretion of the court. *See* Sec. 18, Chap. 550, Laws of Montana 1997. Second, the Legislature adopted contrasting language that expressly limited the court's exercise of discretion, and tied the decision to factual findings, which language remains in effect today.[3]

> The district court *may not* transfer the case back to the youth court *unless* the district court *finds, by a preponderance of the evidence*, that:
>
> (a) a youth court proceeding and disposition will serve the interests of the community protection;
> (b) the nature of the offense does not warrant prosecution in district court; and
> (c) it would be in the best interests of the youth if the matter was prosecuted in youth court.

Section 41-5-206(3), MCA (2019) (emphasis added); *see also State v. Whiteman*, 2005 MT 15, ¶ 11, 325 Mont. 358, 106 P.3d 543.

---

[2] The Legislature also modified the statutory factors from prior law. *See* Sec. 18, Chap. 550, Laws of Montana 1997.

[3] The 2019 version of § 41-5-206, MCA, is at issue here; the 2021 version is unchanged.

¶34 Our transfer cases often recite a standard to the effect that "we review for abuse of discretion a district court's decision whether to transfer to youth court a juvenile case charged in district court." *State v. Talksabout*, 2017 MT 79, ¶ 8, 387 Mont. 166, 392 P.3d 574; Opinion, ¶ 7. This oft-cited general standard is correct only in a narrow sense, and largely fails to capture the restrictions the Legislature has placed upon the court's exercise of discretion. Transfer is no longer a generic discretionary decision by the district court that this Court reviews for abuse of discretion. Rather, the Legislature has anchored the transfer decision to requisite factual findings: "[t]he district court *may not* transfer the case back to youth court *unless the district court finds*, *by a preponderance of the evidence*," the three stated factors. (Emphasis added.) Indeed, the Legislature has now essentially adopted this Court's prior law framework for transfer decisions—if there is substantial evidence to support a district court's findings, then there can be no abuse of discretion, *see In re T.N.*, 267 Mont. at 84, 881 P.2d at 1332—but also narrowed the grounds upon which transfer can be granted. The statute no longer accommodates discretionary reasoning that would rely upon a weighing or balancing or other consideration of the statutory factors. Further, all three factors must be factually found in favor of transfer before transfer is authorized. *Talksabout*, ¶ 11; Opinion, ¶ 8. If any one factor is not factually found by a preponderance of the evidence, transfer cannot be ordered.

¶35 Here, the District Court found by a preponderance of the evidence that factors (a) and (c) were established—that a youth court proceeding would serve the interests of community protection and that it would be in Johnson's best interests if the matter was prosecuted in youth court. While this may appear to be a sound basis for transfer to youth

22

court, the law does not permit the inquiry to stop there. Transfer can only be ordered if the District Court also factually found, by a preponderance of the evidence, that "the nature of the offense does *not* warrant prosecution in the District Court." Section 41-5-206(3)(b), MCA (emphasis added); *see State v. Dietsch*, 2013 MT 245, ¶ 19, 371 Mont. 460, 308 P.3d 111 (denial of transfer upheld where "[s]ufficient credible evidence supports the District Court's finding that the nature of the offense does not warrant a youth court proceeding and disposition").

¶36     In many cases, this particular factual issue—centered on the nature of the offense— may be a relatively straight-forward determination drawn from the self-evident nature of serious allegations brought against the youth upon probable cause, such that a district court would have little or no basis on which to find that the nature of the offense "does not warrant" prosecution in adult court. In other cases, there may be mitigating circumstances upon which a district court could find the nature of the offense did not require an adult proceeding. But the critical analytical point is that the statutory factor is stated in the negative:  to authorize transfer, the District Court must find, by a preponderance of the evidence, that the nature of the offense does *not* warrant prosecution in adult court. Here, the District Court could not so find:

> [T]he Court cannot conclude 'the nature of the offense does not warrant prosecution in district court.'  Mont. Code Ann. § 41-5-206(3)(b). *Talksabout*, 2017 MT 79 at ¶ 20. *The serious and troubling allegations in this case strongly support denying* the Defendant's motion to transfer . . . [T]he alleged victim was 11 at the time of the offenses. Thus, she was a year younger than the younger victim in *Talksabout*. Also, as recounted *supra*, the alleged victim is severely autistic, and the Defendant knew of this before the offenses allegedly occurred. The alleged victim's vulnerability (that the Defendant had knowledge of) is extremely aggravating.

23

Not only did the Defendant allegedly sexual[ly] assault and digitally penetrate the victim, as recounted more fully *supra*, but also he recorded himself doing so as photos and videos of these events exist. Moreover, as recounted *supra*, the severely autistic eleven-year-old stated she performed oral sex on the Defendant.

(Emphasis added.) If not clearly erroneous, this factual finding—that the nature of the offense does indeed warrant prosecution in adult court—is sufficient of itself to bar transfer to youth court by operation of the statute.

¶37 The Court concludes the District Court's finding under factor (b) is not supported by the record. Opinion, ¶ 28. To do so requires the implication that the finding is clearly erroneous after a review of the entire record in deference to the prevailing party. I would conclude the finding is not clearly erroneous. The serious nature of the crime is self-evident and the allegations were supported by probable cause, as reflected in the record. The District Court found no mitigating circumstances that would allow it to conclude that the offense would *not* warrant prosecution in adult court. To the contrary, it clearly would; more than being unable to find the case did not warrant prosecution in adult court, the District Court found the case "*strongly support[ed]*" it. (Emphasis added.)

¶38 It should be remembered that this is a decision to be made by the district court upon its factual findings. "The trier of fact resolves conflicts in the evidence before it, *and this Court will not reevaluate this same evidence on appeal*. Despite the testimony of three of Whiteman's teachers describing him as intelligent and respectful and a psychologist who believed Whiteman just needed more structure, sufficient credible evidence supports the District Court's findings. . . ." *Whiteman*, ¶ 19. (Emphasis added.) (Internal citations omitted.)

24

¶39 To address these determinative principles under current law, the Court adopts new "guiding criteria" to be applied in transfer decisions, reasoning that, without such, "serious offenses . . . will frequently dictate that the nature of the offense is serious and thus justify a proceeding in adult court." Opinion, ¶ 24. The Court holds that "a major consideration for transferring a case from adult court to youth court *must* be the extent to which the offense reflects the offender's youthfulness. Youth is a distinguishing feature and an offender's youthfulness, social maturity, impulsivity, brain development, and other measures of maturity is an important, indeed vital, consideration in a transfer decision." Opinion, ¶ 24. (Emphasis in original.) The Court thus requires these considerations to be integrated in the statutory assessment of the nature of the offense under factor (b). Opinion, ¶ 24. These new requirements are erroneous for several reasons.

¶40 First, they plainly contradict the explicit language and structure of § 41-5-206(3), MCA. The Legislature has carefully designed a three-factor inquiry for transfer decisions, under which transfer can be barred upon failure to find any one of the three factors. Under factor (a) of the statute, the Legislature requires consideration of the interests of the *community*; under factor (b), the Legislature requires consideration of the nature of the *offense*; and under factor (c), the Legislature requires consideration of the best interests of the *youth*. The new mandates the Court is inserting into the factor (b) consideration of the nature of the *offense* are not about the offense at all, but about the *youth*. While the Court's new mandates could conceivably be considered under the factor (c) assessment of the youth, forcing such considerations into the separate factor (b) assessment of the offense is inimical to the independent determinations required by the Legislature. Further in this

25

regard, the Court's reasoning undermines the Legislature's intention regarding nature of the offense by holding that "seriousness of the offense" should be not conflated with the "nature of the offense." Opinion, ¶ 24. However, the seriousness of an offense *is* an element of its nature, perhaps the more fundamental and important one. These are not mutually exclusive, and should be considered together.

¶41 And, with all due respect, this is pure legislating in violation of the separation of powers, as evident from the Court's own reasoning. The Court is unhappy that the statutory factors designed by the Legislature will too "frequently dictate . . . a proceeding in adult court." Opinion, ¶ 24. Consequently, the Court is imposing its own mandates to alter the effect of the Legislature's design. Without question, the Court's mandates will not only broaden the inquiry under the statute, but also change the statute's intended results, requiring a broader set of cases to be transferred to youth court in contradiction with the Legislature's intent to narrow the set of cases that are to be transferred, as established under the statute's plain language and by the above discussion of the legislative history of § 41-5-206(3), MCA. It is the Court's duty to apply the statute as written, not to recast it for a more favorable policy outcome.

¶42 I would affirm.

/S/ JIM RICE

Justice Beth Baker joins the Dissent of Justice Rice.

/S/ BETH BAKER

26