JUSTICE BAKER
delivered the Opinion of the Court.
¶1 The State charged seventeen-year-old Rylan Talksabout with two counts of sexual intercourse without consent. Talksabout sought to have each charge transferred to Youth Court. After analyzing the relevant statutory factors, the District Court denied both transfer motions. Talksabout eventually pleaded guilty to one count, and the court sentenced him to fifty years in prison, with ten years suspended. We address the following issues on appeal:

1. Whether the District Court abused its discretion by denying Talksabout’s requests to transfer the charges to Youth Court;

2. Whether the District Court erred in sentencing Talksabout.

¶2 Applying appropriate deference, we affirm the District Court’s refusal to transfer the charges to Youth Court. We remand for entry of an amended judgment and review of the sentence as provided by law.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In August 2013, the State filed an information in the District Court charging Talksabout with one count of sexual intercourse without consent. The State filed the information directly in the District Court pursuant to § 41-5-206(2), MCA, because of the nature of the charge and because Talksabout was seventeen when the offense *168 occurred. The charge arose out of Talksabout’s non-consensual sexual contact with fourteen-year-old A.C. during an underage drinking party. An intoxicated A.C. told Talksabout that she did not want to have sex, but Talksabout undressed her and digitally penetrated her after trying to have sex with her.
¶4 The District Court held a hearing in January 2014 pursuant to § 41-5-206(3), MCA, to determine whether the case should be transferred to Youth Court. Juvenile Probation Officer Tim Callahan and Great Falls Police Detective Mike Stimac testified for the State. Licensed psychologist Dr. Bowman Smelko and Talksabout’s grandmother Betty Trombley—with whom Talksabout lived—testified on Talksabout’s behalf. Dr. Smelko had evaluated Talksabout and opined that Talksabout’s interests and the interests of the community would best be served by handling the case in Youth Court. The District Court agreed that transferring the case to Youth Court would be in Talksabout’s best interests. It concluded, however, that the nature of the offense and the interests of community protection weighed against transferring the case to Youth Court. The District Court therefore denied the transfer motion. The court noted further that Talksabout was under investigation for an unrelated sex offense involving a minor.
¶5 In January 2014, the State filed another information in the District Court charging Talksabout with a separate count of sexual intercourse without consent. Even though Talksabout was only sixteen at the time of that offense, the State again filed the information directly in the District Court because sexual intercourse without consent is an enumerated offense under § 41-5-206(1), MCA. The incident involved D.P., who was twelve at the time. The second incident was similar to the first—D.P. and Talksabout were at an underage drinking party and Talksabout got D.P. alone in a room, undressed her, and had sex with her after being told no.
¶6 The two cases were consolidated on the State’s motion. In July 2014, the District Court held another hearing pursuant to § 41-5-206(3), MCA, to determine whether to transfer the second incident to Youth Court. Adult Probation Officer Susan Carroll and Detective Stimac testified on behalf of the State, and Dr. Smelko again testified on behalf of Talksabout. The court once more found the statutory criteria for transfer to Youth Court were not met and denied Talksabout’s motion.
¶7 Ultimately, Talksabout agreed to a non-binding plea agreement under which he pleaded guilty to one count of sexual intercourse without consent. The agreement required that Talksabout admit to the facts of both incidents involving A.C. and D.P. The District Court *169 sentenced Talksabout to Montana State Prison for fifty years, with ten years suspended. The court’s sentence did not reflect that Talksabout was a criminally convicted youth. Talksabout appeals.
STANDARDS OF REVIEW
¶8 We review for abuse of discretion a district court’s decision whether to transfer to youth court a juvenile case charged in district court. State v. Dietsch, 2013 MT 245, ¶ 10, 371 Mont. 460, 308 P.3d 111. A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. State v. Derbyshire, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. We review for clear error the specific findings of fact on which the district court relied in making its transfer decision. State v. Whiteman, 2005 MT 15, ¶ 10, 325 Mont. 358, 106 P.3d 543. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. Whiteman, ¶ 10. We view the evidence in the light most favorable to the prevailing party when determining whether a district court’s findings are supported by substantial credible evidence. Welu v. Twin Hearts Smiling Horses, Inc., 2016 MT 347, ¶ 12, 386 Mont. 98, 386 P.3d 937. We review criminal sentences for legality, to determine whether they are within the parameters set by statute as a matter of law. Dietsch, ¶ 10.
DISCUSSION
¶9 1. Whether the District Court abused its discretion by denying Talksabout’s requests to transfer the charges to Youth Court.
¶10 Section 41-5-206, MCA, authorizes the State to charge a youth directly in district court under certain circumstances. A county attorney may seek leave to file an information in district court if the youth was twelve years old or older at the time of the conduct and is alleged to have committed one of several enumerated offenses. Section 41-5-206(1), MCA. If, however, the youth was seventeen years old at the time of the alleged enumerated offense, the county attorney must petition for leave to file the information in district court. Section 41-5-206(2), MCA.
¶11 In either instance, once leave to file the information is granted, “the district court shall conduct a hearing to determine whether the matter must be transferred back to the youth court,” unless the youth or the youth’s counsel waives the hearing. Section 41-5-206(3), MCA. *170 The district court may transfer the case to youth court only if it finds, by a preponderance of the evidence, that:
(a) a youth court proceeding and disposition will serve the interests of community protection;
(b) the nature of the offense does not warrant prosecution in district court; and
(c) it would be in the best interests of the youth if the matter was prosecuted in youth court.
Section 41-5-206(3), MCA. Each of these factors must be met in order to transfer the case to youth court. Section 41-5-206(3), MCA. In analyzing these factors, a district court, “as factfinder[,] sits in the best position to weigh all of [the] evidence” and “resolve!] conflicting evidence before it.” Dietsch, ¶¶ 15, 16. Generally, we will not overturn a district court’s determinations regarding conflicting evidence. Dietsch, ¶ 16; accord Whiteman, ¶ 15 (“[I]t is within the domain of the trial court to resolve conflicts in the evidence based on its assessment of the demeanor and credibility of the witnesses before it, and this Court will not resolve conflicts on appeal.”) (citation and internal quotes omitted).
I. Talksabout’s first transfer request.
¶12 In consideringTalksabout’s motion on the first charge, the District Court reviewed the evidence in light of each factor prescribed by § 41-5-206(3), MCA. First, as to whether transferring the charge to Youth Court would serve the interests of community protection, the District Court noted that Probation Officer Callahan “explained that protecting the community is more challenging with older youths, and given his age, Talksabout cannot complete sex offender treatment before he turns 18 years-old.” The court emphasized Probation Officer Callahan’s testimony that unlike in district court, sex offender registration is not required in a Youth Court disposition. The court noted its concern that prior to the transfer hearing, “Talksabout absconded while released on his own recognizance, failed to appear for Court, and committed a new offense by shoplifting from a local department store.” The court expressed further concern that Talksabout was under investigation for a separate sex offense involving a minor.
¶13 The court acknowledged that Talksabout’s grandmother cared for and was committed to her grandson. But it opined that “Talksabout is not provided with much structure or discipline [at his grandmother’s home], as evidenced by dropping out of school and allegedly committing the present offense while out of the house in the middle of the night without his grandmother’s knowledge.” Finally, the court noted its concern over Talksabout’s “victim impact statements” from Dr. *171 Smelko’s report. The statements conveyed that Talksabout believed that he was the real victim in the situation, exhibiting a lack of empathy and accountability. After considering all of the evidence, the District Court concluded that transferring the case to Youth Court was not in the interests of community protection given “Talksabout’s age, home environment, conduct while on release, minimization of his alleged conduct, and need for more structured supervision if convicted.”
¶14 The District Court next considered whether the nature of the offense warranted prosecution in district court. The court noted that in analyzing this factor, it was required to examine the nature of the allegations and not just the offense itself. (Citing Whiteman, ¶ 13.) The court declared that “there are few offenses more serious than sexual intercourse without consentí,] and using intoxicants to perpetrate such an offense is inexcusable.” The court then summarized Detective Stimac’s testimony, stating that “Talksabout knew the victim’s age and that she was menstruating, yet proceeded to undress her, digitally penetrate her, remove her clothes, and vaginally penetrate her on multiple occasions.” The court noted that during the transfer hearing, “Talksabout’s counsel faulted the victim for becoming intoxicated, flirting with multiple boys at the party, and grabbing Talksabout’s genitals.” The court stated not only that it was unpersuaded by Talksabout’s “implicit assertion” that “ ‘date rape’ is a crime of lesser gravity,” but that such a belief “is as repugnant as it is unsupported.” The District Court concluded that the nature of the allegations warranted prosecution in District Court.
¶15 Addressing whether transferring the case to Youth Court would be in Talksabout’s best interest, the court recognized Dr. Smelko’s testimony that “prosecution in District Court will harm Talksabout’s cognitive and behavioral development, increase his risk to reoffend, and he matches the profile of an offender that can be treated in Youth Court.” The court noted that the State presented very little evidence to contradict Talksabout’s position. The court therefore determined that Talksabout’s best interests weighed in favor of transferring the case to Youth Court. Because Talksabout failed to establish two out of the three elements for transfer under § 41-5-206(3), MCA, the court denied the transfer to Youth Court and retained jurisdiction.
¶16 On appeal, Talksabout contends that the District Court abused its discretion by finding that the interests of community protection and the nature of the offense warranted prosecution in district court. Talksabout argues that the court’s findings on these two elements were not supported by substantial evidence.
¶17 Regarding the interests of the community, Talksabout contends *172 that the evidence established that he had no prior violent criminal or drug history, that his grandmother could provide adequate supervision and make him comply with probation, and that Youth Court could provide adequate supervision. Talksabout contends further that the District Court improperly disregarded Dr. Smelko’s testimony.
¶18 Addressing the nature of the offense, Talksabout claims that the District Court was unwilling to consider any so-called “mitigating facts.” These facts include: that Talksabout is “a developmentally immature 17-year-old”; that he “vaginally penetrated without consent a peer-age intoxicated 14-year-old”; that the other individuals at the party were teenagers and there was alcohol at the party; that the victim “kissed several boys at the party, and one youth stated A.C. actually put her hands down [Talksabout’s] pants”; that another boy “first assaulted A.C. in a room alone”; that Talksabout “walked A.C. home and kissed her good night” after sexually assaulting her; and that Talksabout apparently thought A.C. was old enough to consent. Talksabout again asserts that the District Court failed to adequately consider Dr. Smelko’s testimony in analyzing this factor. Talksabout relies heavily on the fact that the other boy charged in connection with the same incident had his transfer request approved.
¶19 Talksabout does not argue that the District Court committed any error of law. The Dissent contends, however, that the court erred in its interpretation of the transfer statute by failing to consider the “nature of the offense” in light of certain objectives of the Youth Court Act. In the absence of “specific criteria” by which to evaluate the nature of the offense, the Dissent proposes a new standard under which a district court must specifically consider certain legislative purposes articulated in § 41-5-102, MCA. Dissent, ¶ 66. But the legislative purpose governing transfer is that expressly articulated in § 41-5-206(3), MCA, and requires a preponderance of evidence on all three factors in order for the District Court to transfer the matter to Youth Court for adjudication. The Youth Court Act’s purposes are subsumed in § 41-5-206(3)(a) and (c), MCA, under which the District Court must analyze both the interests of community protection and the best interests of the youth. A youth’s best interests include the remedial purposes the Dissent reiterates from the Youth Court Act’s general purposes provision, § 41-5-102(2)-(3), MCA. Dissent, ¶ 68. And the District Court found that the preponderance of the evidence did support a finding that transfer to Youth Court was in Talksabout’s best interests.
¶20 The Dissent cites no case applying § 41-5-206(3), MCA, since its 1997 amendment. Case law construing the current statute confirms that the District Court must look to the nature of the allegations—and *173 not just the seriousness of the offense—in analyzing whether the nature of the offense warrants prosecution in district court. Whiteman, ¶¶ 13-15. The statute commits the question of transfer to Youth Court to the District Court’s discretion. Section 41-5-206(3), MCA; Dietsch, ¶ 10; Whiteman, ¶ 19. We are not persuaded from our review of the record that the District Court’s findings are clearly erroneous. The record substantiates the court’s findings that Talksabout failed to show by a preponderance of the evidence that transferring the case to Youth Court would serve the interests of community protection and that the nature of the offense did not warrant prosecution in the District Court.
¶21 The record establishes that the District Court did not act arbitrarily or fail to employ conscientious judgment when it concluded that “Talksabout’s age, home environment, conduct while on release, minimization of his alleged conduct, and need for more structured supervision if convicted, make[] the District Court a more appropriate forum to supervise Talksabout.” Nor did the court exceed the bounds of reason in concluding that the nature of the offense warranted prosecution in the District Court. Talksabout was accused of undressing and forcibly having sexual intercourse with an intoxicated fourteen-year-old after repeatedly being told no. Though both Dr. Smelko and Talksabout’s grandmother provided testimony to support Talksabout’s contentions, the District Court was in the best position to resolve the conflicting evidence before it. Dietsch, ¶¶ 15, 16. The District Court did not have to accept Talksabout’s “mitigating facts,” which it found to suggest the victim’s responsibility for the incident. The evidence strongly indicated that, if convicted, Talksabout would need sex offender treatment. Talksabout expressed unwillingness to enter treatment, however, and denied that his conduct “sexually offended against” A.C. Even though he had not yet admitted to the offense, Talksabout put this evidence before the court through Dr. Smelko, and the District Court did not clearly err in considering it for the purpose of evaluating the nature of the offense and the interests of community protection.
¶22 It is not the appellate court’s function to undertake, as the Dissent does, a de novo review of the record or to raise objections that might have been, but were not, made by the parties.[1] Instead, this Court *174 reviews a district court’s findings of fact for clear error. Whiteman, ¶ 10. It is the “trier of fact [that] resolves conflicts in the evidence before it, and this Court will not reevaluate this same evidence on appeal.” Whiteman, ¶ 19; accord Dietsch, ¶ 15 (“The District Court as factfinder sits in the best position to weigh all of this evidence.”).
¶23 The Dissent overlooks our decisions in Whiteman and Dietsch deferring to the district courts’ refusal to transfer cases to Youth Court. In Whiteman, we found substantial credible evidence based on testimony from a corrections administrator and probation officer that the youth court had more limited resources for handling young violent offenders and that “youth court proceedings would limit the dispositional options to juvenile correctional or treatment facilities and only for the limited time frame of the youth court’s jurisdiction.” Whiteman, ¶¶ 17-18. In Dietsch, a case involving a sexual offense with circumstances nearly identical to those in the case at bar, we likewise emphasized the district court’s reliance on the youth court’s limited dispositional options, whereas district court prosecution “would allow dispositional options that would include supervision and rehabilitation Tor a period of up to Dietsch’s remaining natural life.’ ” Dietsch, ¶ 14. We relied on evidence in the record concerning the facts of the alleged offense, Dietsch’s “high lack of empathy,” and his “highly significant familiarity about sex with underage girls in his community.” Dietsch, ¶ 16. This evidence, we determined, was sufficient to support the district court’s finding that the nature of the offense did not warrant youth court disposition. Dietsch, ¶ 16. It is difficult to reconcile Whiteman and Dietsch with the Dissent’s analysis of how the District Court should have analyzed the statutory transfer factors in this case.
¶24 Like Whiteman and Dietsch, the evidence presented to the District Court regarding the § 41-5-206(3), MCA, factors conflicted. As in those cases, however, the record contains substantial credible evidence to support the District Court’s findings. Bearing in mind that we view the evidence in a light most favorable to the prosecution, we conclude that the District Court did not abuse its discretion by denying Talksabout’s motion to transfer to Youth Court the sexual intercourse without consent charge related to A.C.
II. Talksabout’s second transfer request.
¶25 After hearing Talksabout’s transfer request related to D.P., the District Court again analyzed the § 41-5-206(3), MCA, factors and likewise concluded that the factors necessitated retention in the *175 District Court. Similar to the first order, the District Court was concerned that Talksabout’s age made treatment in Youth Court more difficult. The court noted that Probation Officer Carroll “expressed concerns over the supervision of Talksabout in Youth Court because he has a negative attitude toward treatment, there are multiple alleged victims, and there is no accountability in Youth Court.” The court emphasized that Dr. Smelko had revised his evaluation to conclude that “Talksabout presents a moderate risk to reoffend.” And the District Court again highlighted Talksabout’s “victim impact statements” from Dr. Smelko’s report demonstrating that the youth did not take responsibility for his actions. The District Court consequently concluded that the interests of community protection would best be served by continuing the case in district court.
¶26 The court’s findings regarding the nature of the offense were nearly identical to its findings in the first transfer order. The court summarized Detective Stimac’s testimony regardingthe allegations as follows: “Talksabout knew the victim’s age, removed her clothes, the victim protested, Talksabout persisted, and forcibly had sexual intercourse with the 12-year-old victim.” The court also noted that the incident was alleged to have occurred a month before Talksabout’s assault of A.C. The court thus concluded that the nature of the offense warranted prosecution in the District Court.
¶27 Finally, the District Court analyzed whether transfer to Youth Court would be in Talksabout’s best interests. The court again highlighted Dr. Smelko’s testimony. This time, however, the court concluded that “Dr. Smelko’s conflicting and incomplete conclusions and diagnoses” supported keeping the case in the District Court. The court explained that Dr. Smelko had conducted new psychological testing on Talksabout’s intellectual functioning that demonstrated he was comparable to an eight- or nine-year-old child. But the court determined that a “close examination of Dr. Smelko’s report reveals that other than baldly concluding that Talksabout has an eight or nine-year old intellectual ability, Dr. Smelko does not actually conclude that he has an intellectual disability as defined by the American Psychological Association and the United States Supreme Court.” The District Court expressed deep concern regarding Dr. Smelko’s opinion that Talksabout fit the hostile masculinity syndrome personality profile. The court quoted a treatise that the State had referenced in cross-examining Dr. Smelko on this diagnosis:
Hostile masculinity syndrome refers to a personality profile that includes interrelated attitudes and emotions that may be grouped within two primary components: The first consists of hostile, *176 distrustful, insecure feelings toward people, particularly women, accompanied by misogynous (woman-hating) attitudes, such as beliefs that rape victims secretly desire to be victimized. The second component consists of a desire to control and dominate women that results in deriving sexual arousal and gratification from such domination over women. Men who have such a syndrome typically also have an insecure sense of masculinity and are hypersensitive to rejection from women. They are frequently highly narcissistic as well.
The court acknowledged that from a punitive perspective, adult penalties were not in Talksabout’s best interest. The court concluded, however, that from a rehabilitative perspective, Talksabout required treatment—treatment that likely could not be completed if the case were handled in Youth Court. Because effective treatment was in Talksabout’s best interest, the court concluded that this factor weighed against transferring the case to Youth Court.
¶28 On appeal, Talksabout contends that the District Court abused its discretion in denying transfer of the second sexual intercourse without consent charge to Youth Court for reasons similar to its denial on the first charge. Talksabout again asserts that the court’s findings were not supported by substantial evidence. Talksabout argues that the District Court acted arbitrarily in affording Dr. Smelko’s report limited weight. He again relies heavily on Dr. Smelko’s testimony and asserts that Dr. Smelko demonstrated that Talksabout was developmentally immature and required treatment as a youth. Thus, Talksabout contends that the evidence regarding his best interests was not conflicting. Talksabout argues that the District Court erred in relying on the probation officer’s testimony in analyzing the interests of community protection because, in Talksabout’s view, the probation officer was focused on adult supervision and failed to account for the specifics of this case.
¶29 Talksabout emphasizes Dr. Smelko’s testimony and the weight the District Court accorded that evidence; but he overlooks that it is the District Court’s role to weigh and resolve conflicts in the evidence before it. Dietsch, ¶¶ 15-16. That the State did not call its own expert is of no moment; “[a] factfinder remains free to disregard an expert’s testimony.” Willis v. Fertterer, 2013 MT 282, ¶ 35, 372 Mont. 108, 310 P.3d 544 (citing Stave v. Estate of Rutledge, 2005 MT 332, ¶ 21, 330 Mont. 28, 127 P.3d 365). The State points out that all of the evidence the District Court found concerning “at the first hearing about the nature of the offense and interests of community protection became even more concerning at the second hearing, since Talksabout’s two *177 offenses were remarkably similar.” Dr. Smelko had conducted additional testing since the first transfer hearing and acknowledged on cross-examination that Talksabout was impulsive, could be expected to entertain potentially dangerous risks to himself and others—including sexual behaviors—and has a pattern of sexually abusive behavior. The additional evidence presented at the second transfer hearingheightened the District Court’s concerns and provided further evidence substantiating its findings on those two statutory factors.
¶30 There also was substantial evidence supporting the District Court’s conclusion that retaining the second charge was in Talksabout’s best interests. As the court noted, Dr. Smelko “reacheldl important conclusions on Talksabout’s risk,” including that Talksabout was a moderate risk to reoffend, his behavior was “likely to be reckless,” and he was “quite impulsive and prone to behaviors likely to be self-harmful or self-destructive.” These observations support the District Court’s conclusion that the treatment and supervision that could be provided under the auspices of the District Court were in Talksabout’s best interest. Moreover, the District Court did not exceed the bounds of reason when it relied on Dr. Smelko’s own conclusion that Talksabout fits the hostile masculinity syndrome personality profile. These were serious concerns that changed Dr. Smelko’s assessment of Talksabout’s recidivism risk. These concerns provide additional support for the District Court’s conclusion that Talksabout would require more intensive supervision and treatment than the Youth Court could provide. Accordingly, we conclude that the District Court did not abuse its discretion in denying Talksabout’s second transfer motion.
¶31 2. Whether the District Court erred in sentencing Talksabout.
¶32 A youth who has been charged and convicted in district court must be sentenced pursuant to § 41-5-2503, MCA. Section 41-5-206(6), MCA. In sentencing the youth, the district court must:
(b) retain jurisdiction over the case until the criminally convicted youth reaches the age of 21;
(c) order the department to submit a status report to the court, county attorney, defense attorney, and juvenile probation officer every 6 months until the youth attains the age of 21. The report must include a recommendation from the department regarding the disposition of the criminally convicted youth.
Section 41-5-2503(l)(b)-(c), MCA. Talksabout contends, and the State concedes, that the case should be remanded to the District Court with instructions to modify the judgment in accordance with these *178 requirements. The State does not agree with Talksabout, however, that § 41-5-2503(2), MCA, also requires the District Court to review Talksabout’s sentence before he turns twenty-one. The State argues that § 41-5-2510(1), MCA, “specifically excludes” Talksabout from the sentence review process provided for in § 41-5-2503(2), MCA.
¶33 Section 41-5-2503(2), MCA, provides that the “district court shall review the criminally convicted youth’s sentence pursuant to 41-5-2510 before the youth reaches the age of 21 if a hearing has not been requested under 41-5-2510.” (Emphasis added.) Section 41-5-2510, MCA, in turn, provides:
When a youth has been convicted as an adult pursuant to the provisions of 41-5-206, except for offenses punishable by death or life imprisonment or when a sentence of 100 years could be imposed, the county attorney, defense attorney, or youth may, at any time before the youth reaches the age of 21, request a hearing to review the sentence imposed on the youth.
Section 41-5-2510(1), MCA (emphasis added).
¶34 In construing statutes, our role “is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. We look “to the plain meaning” of the statute’s language. Eldorado Coop Canal Co. v. Hoge, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836 (citation and internal quotes omitted). And we interpret a statute “as a part of a whole statutory scheme and construe it so as to forward the purpose of that scheme.” Eldorado Coop Canal Co., ¶ 18 (citation and internal quotes omitted). Courts must construe the Criminally Convicted Youth Act in a manner that effectuates the following express legislative purposes:
(1) to protect the public;
(2) to hold youth who commit offenses that may be filed directly in district court pursuant to 41-5-206 accountable for their actions;
(3) to provide for the custody, assessment, care, supervision, treatment, education, rehabilitation, and work and skill development of youth convicted in district court; and
(4) to comply with the legislative purposes set forth in 41-5-102.
Section 41-5-2502, MCA.
¶35 It is undisputed that the State charged and convicted Talksabout as an adult pursuant to § 41-5-206, MCA. As the State points out, the District Court could have sentenced Talksabout to one hundred years for his sexual intercourse without consent conviction. Section 45-5-503(2), MCA (prescribing sentencing requirements for sexual intercourse without consent). Thus, under the plain language of § 41-5- *179 2510(1), MCA, Talksabout could not, “at any time” prior to reaching the age of twenty-one, “request a hearing to review the sentence imposed on [him].” The fact that the statute prohibited Talksabout from requesting an earlier hearing does not, however, bar his sentence from being reviewed. The plain language of § 41-5-2503(2), MCA, provides that “if a hearing has not been requested under 41-5-2510,” then the District Court must still “review [Talksabout’s] sentence pursuant to 41-5-2510 before [he] reaches the age of 21.”
¶36 The statute requires the court to hold a hearing within ninety days after a request for hearing is filed “or” the court determines that a sentence review hearing “is required under 41-5-2503.” Section 41-5-2510(2), MCA. After considering evidence presented at the hearing, as well as records pertaining to the youth and any statements from the victim, the youth’s parents or guardian, or other advocates for the youth, the court is required to determine whether a preponderance of the evidence shows that “the criminally convicted youth has been substantially rehabilitated.” Section 41-5-2510(4), MCA. If it makes a determination of substantial rehabilitation, the sentencing court “shall determine whether to:
(a) suspend all or part of the remaining portion of the sentence, impose conditions and restrictions pursuant to 46-18-201, and place the youth on probation under the direction of the department, unless otherwise specified;
(b) impose all or part of the remaining sentence and make any additional recommendations to the department regarding the placement and treatment of the criminally convicted youth; or
(c) impose a combination of options allowed under subsections (5)(a) and (5)(b), not to exceed the total sentence remaining.
Section 41-5-2510(5), MCA. These statutes guarantee that a criminally convicted youth has at least one opportunity for the sentencing court to review his rehabilitative progress and either reaffirm or revise his sentence when he turns twenty-one.
¶37 Our interpretation of the Criminally Convicted Youth Act furthers the statutory scheme. The Criminally Convicted Youth Act’s express purposes include protection of the public, holding youth accountable for their crimes, and providing “for the custody, assessment, care, supervision, treatment, education, rehabilitation, and work and skill development of youth convicted in district court.” Section 41-5-2502(3), MCA (emphasis added). The Act further ties its “express legislative purposes” to those set forth in the Youth Court Act’s § 41-5-102, MCA. Section 41-5-2502(4), MCA. In other words, the Act does not just shuffle a youth off to the adult offender system and forget about his *180 age. The rehabilitative goals of both the Youth Court Act and the Criminally Convicted Youth Act follow the youth until he or she reaches the age of twenty-one and the District Court makes an express determination whether to finally impose the full adult sentence. Prohibiting the District Court from reviewing Talksabout’s sentence would defeat the statutory scheme and render pointless the provisions requiring status reports and a “recommendation from the department regarding the [youth’s] disposition” to facilitate the sentencing court’s review. Section 41-5-2503(l)(c), MCA.
¶38 We conclude that the District Court erred by not including the requirements found in 41-5-2503(1), MCA, in Talksabout’s sentence. On remand, because Talksabout turned 21 while this appeal was pending, the District Court must review his sentence pursuant to § 41-5-2510, MCA.
CONCLUSION
¶39 We affirm the District Court’s orders denying Talksabout’s transfer motions. We remand to the District Court to amend the judgment and review Talksabout’s sentence consistent with this opinion.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and RICE concur.

 For example, no one objected at the first hearing to the District Court’s consideration of Dr. Smelko’s report, and the State moved for admission of Smelko’s supplemental report at the second hearing—with no objection. And Talksabout did not raise, either in the District Court or on appeal, any issue concerning infringement of the *174 presumption of innocence or his right to remain silent. Dissent, ¶¶ 53-60.