DA 24-0169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 114

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ISAIAH JAMES PEHRINGER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause Nos. DC 20-44 and DC 21-09
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brian Owens, Law Office of Brian Owens, Whitefish, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

      Wyatt A. Glade, Custer County Attorney, Shawn A. Quinlan, Deputy County Attorney, Miles City, Montana

Submitted on Briefs:  April 22, 2026

Decided:  June 2, 2026

Filed:

                              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Defendant and Appellant Isaiah James Pehringer (Pehringer) appeals from the January 24, 2024 Order Following Sentence Review Hearing issued by the Sixteenth Judicial District Court, Custer County, which denied modification of Pehringer's original sentences.

¶2     We address the following restated issue on appeal:

*Whether Pehringer was denied statutory rights resulting in substantial injustice when the CCYA was not followed for nearly three years after Pehringer's original sentences.*

¶3     We affirm in part, reverse in part and remand for application of the CCYA provisions with opportunity to hold a meaningful sentence review hearing after compliance therewith.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     This appeal involves two criminally convicted youth sentences imposed in DC 20-44 and DC 21-09.[1]  On June 1, 2020, the Custer County Attorney charged Pehringer in DC-20-44, pursuant to the Montana Youth Court Act (MYCA) at § 41-5-206(2), MCA, with Count I: misdemeanor assault; Count II: felony assault on a peace officer; and Counts III-V: misdemeanor assaults with bodily fluid.  Upon holding a transfer hearing pursuant to § 41-5-206(3), MCA, the District Court denied transferring the case to Youth Court. Pehringer pled guilty to Counts I, III, IV, and V and was convicted at jury trial of Count II.

---

[1] Pehringer has a companion appeal in Cause No. DA 24-0183 involving the same issues in which we simultaneously issue a companion Opinion.

2

At sentencing on May 11, 2021, Pehringer was sentenced to six months with credit for time served for Count I; 10 years to the Department of Corrections (DOC), with 5 years suspended for Count II; and a term of 240 days with credit for time served on each count for Counts III-V. Pehringer appealed asserting the District Court did not have jurisdiction over the misdemeanor charges of Counts I, II, IV, and V. This Court agreed as to Counts I, IV, and V and remanded to vacate these convictions. Following remand, the District Court issued a new sentencing order imposing the same sentences for Counts II and III that it originally imposed.[2]

¶5      On January 27, 2021, the Custer County Attorney charged Pehringer in Cause No. DC 21-09, pursuant to § 41-5-206(2), MCA, with Count I: misdemeanor assault; Count II: felony assault on a peace officer; and Count III: felony possession of a deadly weapon by a youth in a facility. Upon holding a transfer hearing pursuant to § 41-5-206(3), MCA, the District Court denied transferring the case to Youth Court. Pehringer pled guilty to Counts I and II, and Count III was dismissed. At sentencing on October 4, 2021, Pehringer was sentenced to six months for Count I, and 10 years DOC with 5 years suspended for Count II. The court's judgments in both Cause Nos. DC 20-44 and DC 21-09 failed to reflect that Pehringer was a criminally convicted youth under the CCYA, § 41-5-2501, MCA, et seq., or contain any of the relevant provisions applicable to Pehringer as a criminally convicted youth under the Act.

---

[2] The District Court noted that the sentence was fully satisfied as to Count III.

¶6 On September 23, 2023,[3] Pehringer filed a motion for a sentence review hearing pursuant to § 41-5-2510(1), MCA, and a request for discovery. The District Court, in turn, noted the motion to be untimely as it was not made before Pehringer turned 21 and that it could not determine if a review hearing was warranted under the CCYA as the motion was not supported by DOC status reports, support letters, statement of programs completed, accomplishments made by Pehringer, or a personal statement affidavit. The District Court advised that with confirmation of jurisdiction and showing of good cause, the District Court would docket a CCYA sentence review hearing. Thereafter, Pehringer filed objections to the sentencing court's original failure to include statutory provisions relating to Pehringer being a convicted youth under the CCYA—including failure to order the DOC to submit status reports as required by § 41-5-2503(1)(c), MCA—and failure of the District Court to review Pehringer's sentence before he reached age 21 as required by § 41-5-2503(2), MCA. Pehringer also asserted *State v. Talksabout*, 2017 MT 79, 387 Mont. 166, 392 P.3d 574,[4] supported the court's jurisdictional authority to hold a sentence review hearing and renewed his request for discovery. The District Court thereafter set a sentence review

---

[3] It is noted Pehringer turned 21 on September 13, 2023.

[4] Talksabout was sentenced in district court for a SIWOC he committed at age 17. Similar to *Knowles* and this case, the sentencing court failed to include statutory provisions relating to Talksabout being a convicted youth under the CCYA in its judgment. On appeal, Talksabout asserted the right to sentence review under the CCYA despite having already turned 21. After discussing the rehabilitative goals of the CCYA and the Youth Court Act, this Court determined that "[p]rohibiting the District Court from reviewing Talksabout's sentence would defeat the statutory scheme and render pointless the provisions requiring status reports and a 'recommendation from the department regarding the [youth's] disposition' to facilitate the sentencing court's review" and remanded to the district court to review his sentence. *Talksabout*, ¶¶ 37-38.

4

hearing and ordered DOC to submit a status report to the court and the parties which included recommendation regarding disposition of Pehringer as a criminally convicted youth.

¶7     The District Court held a sentence review hearing pursuant to § 41-5-2510, MCA. On January 24, 2024, the District Court issued its Order Following Sentence Review Hearing in which it explained that the CCYA directs that it be interpreted and construed to effectuate the legislative purposes of the Act set forth in § 41-5-102, MCA—including "to provide judicial procedures in which the parties are ensured a fair, accurate hearing and recognition and enforcement of their constitutional and statutory rights"—and concluded it had jurisdiction to hold a hearing and conduct sentence review past Pehringer turning 21 as "the provisions at issue are properly interpreted as recognizing a broad right to sentence review over imposing a 'drop dead' date for jurisdiction.  Thus, the [c]ourt retains jurisdiction beyond age 21 if, due to circumstances, the Defendant has not been afforded his statutory right to sentence review."  The District Court then found, from the evidence presented at the hearing, that Pehringer had not been substantially rehabilitated and was not entitled to a sentence reduction.  Pehringer appeals.  Additional facts will be discussed as necessary below.

**STANDARD OF REVIEW**

¶8     We review criminal sentences for legality.  *State v. Souther*, 2022 MT 203, ¶ 6, 410 Mont. 330, 519 P.3d 1 (citing *State v. Seals*, 2007 MT 71, ¶ 7, 336 Mont. 416, 156 P.3d 15).  We review a district court's discretionary decisions for abuse of discretion. *State v. Colvin*, 2016 MT 129, ¶ 10, 383 Mont. 474, 372 P.3d 471 (citing *State v. Breeding*,

5

2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313). A district court abuses its discretion when it acts arbitrarily, without conscientious judgment or in excess of the bounds of reason resulting in substantial injustice. *State v. Walla*, 2025 MT 42, ¶ 7, 421 Mont. 11, 564 P.3d 850.

## DISCUSSION

¶9    *Whether Pehringer was denied statutory rights resulting in substantial injustice when the CCYA was not followed for nearly three years after Pehringer's original sentences.*

¶10    On appeal, Pehringer asserts the sentence review hearing denied his constitutional rights. Further, he asserts the District Court's failures to comply with the CCYA—failure to order the DOC to submit status reports every 6 months until he turned 21, to review those reports, and to conduct review prior to turning 21—made it impossible for him to demonstrate substantial rehabilitation by the time of the sentence review hearing by, in essence, denying him the opportunity for rehabilitative programming based on the length of his sentence. Pehringer also contends the District Court's failing to reduce his sentence was an abuse of discretion due to this due process violation.

¶11    In response, the State asserts Pehringer's arguments are based solely on the omissions from the judgments of the statutory requirements of the CCYA and that he did not timely raise such through direct appeal, which the State asserts would have allowed the sentencing court to correct this error. By failing to appeal and instead rely on sentence review, the State asserts Pehringer waived any relief. The State further contends that Pehringer cannot support his argument that the omitted reports violated due process as he had an opportunity to explain, argue, and rebut all the evidence that undermined a finding

6

of substantial rehabilitation at the sentence review hearing. In reply, Pehringer contends the State fundamentally misunderstands the nature of the statutory violations at issue—it was not a discrete sentencing error occurring at a single point in time subject to direct appeal but ongoing procedural failures. The CCYA's mandatory requirements create ongoing obligations that cannot be waived by a defendant's failure to appeal. The CCYA mandates that the court require DOC to submit status reports every 6 months and that the sentencing court review the criminally convicted youth's sentence before the youth reaches age 21. These requirements are ongoing procedural safeguards designed to ensure continuous judicial oversight and rehabilitation opportunities.

¶12    In addressing the issues in this case we find *State v. Knowles*, 2025 MT 107, 422 Mont. 70, 569 P.3d 184, to be instructive with Pehringer's situation substantially similar to that of Knowles. In *Knowles*, we discussed the purpose of the CCYA and the Youth Court Act—creating heightened protections for youth offenders within a system that does not seek retribution, which reflects youths' greater prospects for reform than adults, and which provides for the physical and mental development of youth and services before they become adult offenders:

> Montana enacted the CCYA in 1999 via Senate Bill 54. 1999 Mont. Laws ch. 532, §§ 17-20. Senate Bill 54 was introduced at the request of the Montana Department of Corrections by Senator Mike Halligan. Representatives of the DOC, the Montana Juvenile Probation Officers Association, and the Board of Crime Control appeared before the Senate Judiciary Committee in support of the bill. Specific to the provisions of the bill creating the CCYA, Matt Robinson on behalf of the DOC noted the bill addresses how juveniles convicted in adult court "should be treated by the justice system" by having the DOC "provide reports to the court so that the court can track these juveniles." *Senate Judiciary Committee Hearing Minutes in re SB 54* at 13 (Jan. 6, 1999). Robinson informed the committee

7

that "[i]nformation and progress reports are provided every six months" and noted the bill's provisions conform to "Montana's Constitution which contains the unique provisions that allow for more protection for juveniles." *Senate Judiciary Committee Hearing Minutes in re SB 54* at 13 (Jan. 6, 1999). In enacting the CCYA, the Legislature set forth its purpose as follows:

> The criminally convicted youth act must be interpreted and construed to effectuate the following express legislative purposes:
>
> (1) to protect the public;
>
> (2) to hold youth who commit offenses that may be filed directly in district court pursuant to 41-5-206 accountable for their actions;
>
> (3) to provide for the custody, assessment, care, supervision, treatment, education, rehabilitation, and work and skill development of youth convicted in district court; and
>
> (4) to comply with the legislative purposes set forth in 41-5-102.

Section 41-5-2502, MCA. The CCYA "is a procedural mechanism comprised primarily of a sentencing provision applicable to youths convicted in the adult system, § 41-5-2503, MCA, and a sentence review provision available to them until they turn 21, § 41-5-2510, MCA." *State v. Mainwaring*, 2007 MT 14, ¶ 13, 335 Mont. 322, 151 P.3d 53. The Montana Youth Court Act, with whose legislative purposes the CCYA is to comply, set forth its purpose as follows:

> The Montana Youth Court Act must be interpreted and construed to effectuate the following express legislative purposes:
>
> (1) to preserve the unity and welfare of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of a youth coming within the provisions of the Montana Youth Court Act;
>
> (2) to prevent and reduce youth delinquency through a system that does not seek retribution but that provides:

8

(a) immediate, consistent, enforceable, and avoidable consequences of youths' actions;

(b) a program of supervision, care, rehabilitation, detention, competency development, and community protection for youth before they become adult offenders;

(c) in appropriate cases, restitution as ordered by the youth court; and

(d) that, whenever removal from the home is necessary, the youth is entitled to maintain ethnic, cultural, or religious heritage whenever appropriate;

(3) to achieve the purposes of subsections (1) and (2) in a family environment whenever possible, separating the youth from the parents only when necessary for the welfare of the youth or for the safety and protection of the community;

(4) to provide judicial procedures in which the parties are ensured a fair, accurate hearing and recognition and enforcement of their constitutional and statutory rights.

Section 41-5-102, MCA. This Court has found that the stated purposes of the Youth Court Act:

reflect several key underpinnings. First is the moral judgment that troublesome youths have "diminished culpability," undercutting the justification for retributive responses and instead demanding care for their welfare. *See Montgomery* [*v. Louisiana*], 577 U.S. [190, 207], 136 S. Ct. [718, 733 (2016)] (quotation omitted); § 41-5-102, MCA (creating a "system that does not seek retribution" and allowing for the separation of a youth from parents "only when necessary for the welfare of the youth" or community safety). Second is the empirical assessment that youths have "greater prospects for reform" than their adult counterparts, a prognosis that buoys hope of avoiding unnecessary entanglement with the criminal justice system in adulthood. *See Montgomery*, 577 U.S. at [207], 136 S. Ct. at 733 (quotation omitted); § 41-5-102, MCA (providing for the "mental and physical development" of youths and

9

services "for youth *before* they become adult offenders" (emphasis added)).

*In re S.G.-H.M.*, 2021 MT 176, ¶ 18, 404 Mont. 531, 490 P.3d 1248.

The Youth Court Act and CCYA, each containing heightened protections for juvenile offenders, are statutory recognitions in this state of the fact that "juveniles are 'constitutionally different from adults in their level of culpability,' and those differences must be considered by a sentencing court." *State v. Keefe*, 2021 MT 8, ¶ 13, 403 Mont. 1, 478 P.3d 830 (quoting *Montgomery*, 577 U.S. at 213, 136 S. Ct. at 736) (*Keefe II*). This is true because "juveniles have diminished culpability and greater prospects for reform[.]" *Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 2464 (2012). As *Montgomery* noted, the *Miller* Court explained three significant gaps between juveniles and adults:

> First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity."

*Montgomery*, 577 U.S. at 207, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at 471, 132 S. Ct. at 2464). In sentencing a juvenile offender in this state, the CCYA "does not just shuffle a youth off to the adult offender system and forget about his age. The rehabilitative goals of both the Youth Court Act and the Criminally Convicted Youth Act follow the youth until he or she reaches the age of twenty-one and the [d]istrict [c]ourt makes an express determination whether to finally impose the full adult sentence." *State v. Talksabout*, 2017 MT 79, ¶ 37, 387 Mont. 166, 392 P.3d 574.

*Knowles*, ¶¶ 19-20.

¶13 Similar to *Knowles*, although Pehringer frames the issue as a constitutional one, the affirmative statutory mandates of the CCYA were not followed in this case. As in *Knowles*,

because they were not followed, "we are able to decide this case without reaching constitutional issues." *Knowles*, ¶ 18 (internal citation omitted).

¶14 In this case, Pehringer was 17 years old at the time of the offense and 19 years old when the District Court sentenced him, as an adult, to concurrent 10-year DOC commitments, with 5 years suspended. The District Court's judgments failed to comply with the CCYA as they did not reflect that Pehringer was a criminally convicted youth subject to the provisions of the CCYA and failed to incorporate those provisions. Pursuant to the CCYA:

> (1) The district court, in sentencing a youth adjudicated in district court pursuant to 41-5-206, shall:
>
> (a) impose any sentence allowed by the statute that established the penalty for the offense of which the youth is convicted as if the youth were an adult and any conditions or restrictions allowed by statute;
>
> (b) retain jurisdiction over the case until the criminally convicted youth reaches the age of 21;
>
> (c) order the department to submit a status report to the court, county attorney, defense attorney, and juvenile probation officer every 6 months until the youth attains the age of 21. The report must include a recommendation from the department regarding the disposition of the criminally convicted youth.
>
> (2) The district court shall review the criminally convicted youth's sentence pursuant to 41-5-2510 before the youth reaches the age of 21 if a hearing has not been requested under 41-5-2510.

Section 41-5-2503, MCA. The language of the statute is not discretionary. It requires the sentencing court order DOC to submit status reports to the court, county attorney, defense attorney, and juvenile probation officer every six months—to include the DOC's recommendation "regarding the disposition" of the offender—until the youth offender

11

turns 21 and it requires that the sentencing court must review the youth's sentence prior to the youth offender turning 21. As discussed in *Knowles*, the presumed purpose of the status reports is to, at least in part, assist the youth in understanding what rehabilitation efforts or programs the youth should be participating in, assist the youth in getting into those efforts and programs, and provide the youth feedback as to his success or lack thereof so that the youth has notice of deficiencies and the opportunity to address them prior to a review hearing. *Knowles,* ¶ 21. The reports presumably also are to assist the DOC, the youth's probation officer, and the sentencing court in assuring the youth is provided opportunities for meaningful rehabilitation programs and services. *Knowles*, ¶ 21. Further, the reports are also to assist the youth's counsel to bring compliance issues before the court should the youth not be receiving services or to counsel the youth as to the legal implications of the reports.

¶15    Similar to *Knowles*, the District Court held a sentence review hearing to determine whether Pehringer had been substantially rehabilitated warranting sentence modification. Like *Knowles*, because the District Court did not follow the CCYA in its original judgments Pehringer did not receive any of the benefit ongoing status reports may have provided to him prior to a review hearing. Likewise, the District Court did not have the benefit of ongoing status reports as contemplated by the CCYA prior to making its determination of whether Pehringer had been substantially rehabilitated—it had access to only one status report which it ordered DOC to submit immediately preceding the sentence review hearing. None of the DOC, the youth's probation officer, or his attorney had the benefit of ongoing

12

reports to assist them in making sure Pehringer was provided opportunity to participate in appropriate rehabilitative programs and services.

¶16 While the District Court did not abuse its discretion in determining the evidence presented at hearing did not support modification of Pehringer's sentence, the original error of failing to order DOC to provide status reports set in motion a cascade of unintended consequences violating the purposes of the CCYA. Pehringer's statutory right to sentence review was compromised by denying him the opportunity to engage in rehabilitative efforts to permit him to build evidence of his rehabilitation for presentation at his sentence review hearing. Pehringer was denied the rehabilitative provisions of the CCYA through no fault of his own. For nearly three years, he was treated as though he was just another adult offender, not as the criminally convicted youth he was, and did not receive the rehabilitative benefits expressly provided for by the CCYA and Youth Court Act. Without the benefit of being permitted to participate in any rehabilitative programs or services and modify his behavior based on periodic status reports, Pehringer was, in turn, denied the opportunity for a meaningful sentence review hearing rather than a perfunctory denial of modification of sentence.

¶17 Like Knowles, Pehringer was shuffled off to an adult offender system which did not just "forget about his age," *Talksabout*, ¶ 37, it forgot about him entirely. While Pehringer should have been provided opportunities to participate in meaningful rehabilitation programs and services and receiving updates from the DOC every six months which would detail his progress, or lack thereof, towards rehabilitation until he turned 21, he instead received zero during the statutory time period. Although the District Court correctly

13

recognized the legislative purposes of the CCYA "to provide judicial procedures in which the parties are ensured a fair, accurate hearing and recognition and enforcement of their constitutional and statutory rights" and concluded it had jurisdiction to hold a hearing and conduct sentence review past Pehringer turning 21, properly interpreting a broad right to sentence review over imposing a "drop dead" date for jurisdiction, Pehringer's statutory right to sentence review was compromised by denying him the opportunity to engage in rehabilitative efforts to permit him to build evidence of his rehabilitation for presentation at his sentence review hearing.

¶18 As we have explained, the CCYA "does not just shuffle a youth off to the adult offender system and forget about his age. The rehabilitative goals of both the Youth Court Act and the Criminally Convicted Youth Act follow the youth" into the system. *Talksabout*, ¶ 37. To meet these statutory rehabilitative goals—and the mandates and purposes of the Youth Court Act and CCYA—it is imperative DOC make rehabilitative services available to youthful offenders in the adult system without delay, rather than ration the services based on parole eligibility calculated on the length of a youth's original sentence. Failure to do so frustrates the rehabilitative goals of the Youth Court Act and CCYA.

¶19 Pehringer seeks reversal and discharge of his term of commitment or alternatively, remand to apply the rehabilitative provisions of the CCYA. The State asserts Pehringer is not entitled to any relief at this late stage based on the omissions of the statutory requirements. We find neither position to be persuasive. We cannot conclude that, on the record before it, the District Court abused its discretion such that Pehringer is entitled to

14

reversal and discharge. The purpose of the CCYA, however, is to provide a youth with rehabilitative services and programs and feedback so that the youth is empowered to rehabilitate and seek reduction in sentence upon doing so. Discharge of his term of commitment without rehabilitative efforts would be inappropriate. Pehringer is, though, entitled to performance of the obligations owed to him under the CCYA.

¶20 A criminally convicted youth being denied application of the beneficial and rehabilitative CCYA provisions is a substantial injustice and we determine the matter must be remanded to allow DOC and the District Court to apply the rehabilitative CCYA provisions to Pehringer for a period of two years prior to a CCYA sentence review hearing.

## CONCLUSION

¶21 The District Court abused its discretion by failing to include in its judgments statutory provisions relating to Pehringer being a convicted youth under the CCYA and in failing to review Pehringer's sentence before he reached age 21. As such, Pehringer did not receive the statutory rehabilitative benefits of the CCYA for nearly three years following his original sentences. The matter must be remanded to allow DOC and the District Court to apply the rehabilitative CCYA provisions to Pehringer for a period of two years prior to conducting a CCYA sentence review hearing.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER

15

Justice Jim Rice, specially concurring.

¶22 Pehringer's briefing argues at length that the failure of the Custer County District Court to include the mandatory sentencing provisions of § 41-5-2503, MCA, in the judgments entered on May 11, 2021, in DC-20-44 and on October 4, 2021, in DC-21-09 constitute statutory and constitutional violations, as well as an abuse of discretion ("This brief addresses the failure of the District Court to comply with the Criminally Convicted Youth Act as mandated by Mont. Code Ann. § 41-5-2503 and § 41-5-2510 and argues that such failure constitutes a violation of due process rights . . . [and] resulted in an abuse of discretion that cause a substantial injustice to Isaiah."). However, as the State correctly points out, these arguments have been made years too late under the rules governing the appellate process, and have been waived or forfeited, as required under decades-long case precedent. *See State v. Muhammad*, 2002 MT 47, ¶ 22, 309 Mont. 1, 43 P.3d 318 (citation omitted) ("Muhammad first filed his notice of appeal on July 26, 2000, more than one year after the imposition of the banishment condition in the May 28, 1999, Order. Therefore, since Muhammad failed to timely file a notice of appeal from the May 28, 1999, Order, he is precluded from now challenging the legality of the conditions therein imposed."); *In re M.W.*, 2012 MT 44, ¶ 12, 364 Mont. 211, 272 P.3d 112 ("M.W. did not appeal from the order imposing the registration requirement entered by the Youth Court in July 2009. Under M. R. App. P. 5 (now M. R. App. P. 4(5)), M.W. had 60 days to appeal, but that time has long passed, and the challenge he now attempts to make to the original imposition of the requirement has been forfeited."); *State v. Torres*, 2017 MT 177, ¶ 10, 388 Mont. 161, 398 P.3d 279 ("Torres' argument that a revocation proceeding 'is as good a venue as

16

any to allege illegality of an imposed sentence for the underlying offense,' runs counter to longstanding precedent . . . . Essentially, Torres seeks a second chance to appeal and raise issues he failed to raise when he did not appeal from his conviction."); *see also State v. White*, 2008 MT 464, ¶ 20, 348 Mont. 196, 199 P.3d 274, and *State v. Adams*, 2013 MT 189, ¶ 17, 371 Mont. 28, 305 P.3d 808. Pehringer fails to acknowledge that he has had multiple opportunities over the years to avail himself of relief, including appealing to correct his sentences or even inquiring about the status reports that were to be submitted every six months, which may have triggered action by the Department, the County Attorney, or the District Court, but he did nothing.[1] Indeed, he said nothing for over two years. He cannot now claim his judgments are legally incorrect and premise a constitutional violation thereon. Likewise, the Court's conclusion that "the District Court abused its discretion by failing to include in its judgments statutory provisions relating to defendant being a convicted youth under the CCYA," Opinion, ¶ 21, is incorrect on the same basis.[2] Pehringer's failure to appeal distinguishes this case from *Talksabout* and *State v. Knowles*, 2025 MT 107, ¶ 7, 422 Mont. 70, 569 P.3d 184, both of which involved timely appeals by the youths to correct the failure to include the requisite CCYA provisions in

---

[1] In Pehringer's judgment at issue in the companion appeal, DA 24-0183, the District Court orally pronounced the mandatory CCYA provisions during sentencing, but they were not included in the written judgment. Thus, Pehringer there had the additional remedy under § 46-18-116(2), MCA, to request "that the court modify the written judgment to conform to the oral pronouncement." He did not do so.

[2] And, in any event, the CCYA provisions are not discretionary, but mandatory, *see* § 41-5-2503(1)(a), MCA (when sentencing a youth convicted as an adult, a district court "shall . . . impose" the provisions), and the failure to include them is an error of law. *See State v. Talksabout*, 2017 MT 79, ¶ 32, 387 Mont. 166, 392 P.3d 574.

their judgments. Indeed, in *Knowles*, the State conceded the error, resulting in this Court's order remanding the case for entry of an amended judgment and dismissal of the appeal. *Knowles*, ¶ 7.

¶23 What followed in *Knowles* was a second appeal when this Court's remand order was inadvertently not followed, and the CCYA process not undertaken. *See Knowles*, ¶ 8. The Court thus reasoned that depriving Knowles of the benefit of these provisions was "a substantial injustice" that necessitated a remand "to allow DOC and the District Court to apply" the statutes properly, and permitting Knowles "a CCYA sentence review hearing should Knowles request one within two years of the date of this Opinion." *Knowles*, ¶¶ 3, 27. This was essentially an equitably crafted remedy to correct the failure to follow our order and provide the requisite process. The Court provides a similar remedy here. *See* Opinion, ¶ 21. While Pehringer did not timely seek amendment of his judgments, given that the statutes here provide a unique post-judgment sentence review process that continues for years following the judgment, during which the District Court is to retain jurisdiction, I concur that a similar remedy should be available to Pehringer, although such a remedy may not equitably follow in other cases not involving retained jurisdiction. However, I disagree with his argument that he should be relieved of his sentence altogether, and thus concur with the Court's denial of that relief.

¶24 I also agree with the Court that the District Court did not abuse its discretion by concluding, following the review hearing, that Pehringer had not been substantially rehabilitated based upon a preponderance of the evidence, and denying his request to modify his sentence. The DOC filed a status report that documented multiple disciplinary

infractions, including a recent major violation, and which recommended no change in his sentence. The District Court reasoned that, "review of Mr. Pehringer's conduct during custody reveals the same kind of challenges to authority and violence that were hallmarks of the Youth's prior to disposition . . . Mr. Pehringer's conduct continues to exhibit undue danger to others and antisocial attitudes which preclude a finding that substantial rehabilitation has been achieved." There was ample evidence to support the District Court's findings, and under the standard of review, the District Court did not abuse its discretion in denying a modification to the sentence.

/S/ JIM RICE